Corbit L. JONES, Appellant,

v.

UNDERWOOD & WELD COMPANY, Inc., et al., Appellees.

No. 6849.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 8, 1966.

Barber & Seale, Jasper, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellee.

PARKER, Justice.

This is a common law damage suit arising out of the collision between a Rambler automobile driven by the plaintiff's wife and a truck owned by Underwood & Weld, Inc., driven by Delmer Willis Wilson. A jury was empaneled. After both sides had rested, the trial court instructed a verdict for the defendants, Wilson and Underwood & Weld, Inc. Judgment was rendered and entered that the plaintiff, Corbit L. Jones, recover nothing against the defendants. Plaintiff has appealed. The parties here will be designated as in the trial court.

Plaintiff Jones went to trial on his amended petition, alleging negligence on the part of Wilson in the following respects: (1) failing to keep a proper lookout; (2) failing to have the truck under proper control; (3) operating at an excessive rate of speed; and (4) discovered peril. Defendants answered by a general denial and a plea of contributory negligence, in connection with which it was alleged that plaintiff's wife was traveling on State Highway 105, approaching a through highway upon which defendant's truck was traveling; that there was a stop sign facing plaintiff's wife at the intersection; that Art. 6701d, § 67, Vernon's Ann.Civ.St., provided that no person should start a vehicle which is stopped until such movement can be made in safety, and § 73 provided that a driver of a vehicle shall stop as required by law at the intersection of a through highway and yield the right-of-way. Plaintiff's sole point of error is:

"The Trial Court erred in instructing a verdict for the defendants, because the evidence raised issues of fact as to whether or not the defendant truck driver Delmer Wilmer Willis was negligent, and as to whether or not the plaintiff's wife Claudie Mae Jones was contributorily negligent."

In passing upon this point of error we honor the rule that it is in the province of the jury to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses. This court may consider only that evidence, if any, which, viewed in its most favorable light, would support jury findings in favor of the plaintiff, disregarding all evidence which would lead to a contrary

result. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957). At the same time, this court is bound by the principle that where a litigant admits positive facts which, if true, would defeat his right to recover and such admissions are not subsequently modified by the litigant that he or she is conclusively bound by such admissions and cannot successfully complain if the trial court directs a verdict against the litigant. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569 (S.Ct. 1940).

█ It is undisputed that the collision took place within State Highway 69, sometimes called Eleventh Street, where Highway 105 intersects it. Highway 69 is a through highway with a speed limit of 50 m.p.h. It runs north and south. The truck was traveling in a southerly direction on Highway 69. At that point, the southbound traffic has two lanes, separated from the northbound traffic by an esplanade. At the intersection of Highway 69 with Highway 105 there is no stop sign for Highway 69 traffic but there is a stop sign for Highway 105 traffic traveling east. The speed of the truck was 45 m.p.h. The speed limit was 50 m.p.h. on both highways.

Plaintiff offered in evidence answers to his request for admissions of fact from the driver of the truck, Delmer Wilson, as follows:

"A. The highway I was driving on is a cement highway. Two lanes for traffic. I don't recall that any of the lanes were closed. There was other traffic besides the Rambler on the intersecting street that I noticed on my left stopping at the intersection."

"A. When I first noticed the Rambler it was some distance from the stop sign approaching the intersection. Since the Rambler and also my truck were both moving, it is impossible to make an accurate estimate as to the distance between them at the time, but I would estimate the distance at something between 100 and 200 feet between the two vehicles when I first noticed the Rambler."

"I was traveling at a speed of approximately 45 miles an hour when I let up on my accelerator. This estimate is based on my driving experience."

Other admissions so offered are summarized: On or about May 11, 1964, Claudie Mae Jones, wife of plaintiff, was operating an automobile in the City of Beaumont, Texas. On the same day, Delmer Willis Wilson was operating a truck in the City of Beaumont, Texas. On the same date, an automobile operated by Claudie Mae Jones and a truck operated by Delmer Willis Wilson were involved in a collision, which occurred at the intersection of Highway 105 and Eleventh Street in the City of Beaumont, Texas, where the front end of the truck being operated by Delmer Willis Wilson came into contact with the left side of the automobile being operated by Claudie Mae Jones. The foregoing was offered under the adverse party rule. There is no evidence to the contrary.

Plaintiff's evidence is limited to two witnesses, namely, Corbit Jones and his wife. Corbit Jones, the plaintiff, did not see the accident. He testified he arrived at the scene after his car had been moved off the highway. He talked to the driver of the truck, who told him, "I thought she was going to stop, but she didn't." He testified as to a curve on Highway 69 some distance to the left of any automobile stopped on Highway 105 traveling in an eastwardly direction. He said he did not know how far the curve was or where the trees were located. He said that at the place where a car would come to a stop at the stop sign on Highway 105 he didn't know whether there was anything which would obscure a driver's vision. He testified that he had never had any trouble seeing cars coming from his left and that the truck involved was a pretty good sized truck.

Plaintiff's wife was the driver of the Rambler automobile involved in the collision and testified as follows: She was familiar

with the road. There was and is a stop sign on the Sour Lake Highway (Highway 105) for traffic traveling east on the west side of Eleventh Street. On frequent trips she had made she noticed the stop sign. It was there on the date of the collision. She drove up to the stop sign and stopped and looked down Highway 69 to the north where traffic is supposed to come from and didn't see anything. "I started—I pulled out and changed gear from low to second, and that's all I know." She looked down the highway to her left which was the direction from which traffic was coming, that is to the north. She came to a complete stop, went into low gear, saw no traffic to her left approaching, started across and shifted into second gear. The next thing she remembered there was a man in the car with her and the car was stopped. She testified, "I don't know just how it happened, but I know where it happened." She was intending to cross the southbound lanes of Eleventh Street. She admitted there were no stop signs on Highway 69 at that intersection. Having traveled that route before, she knew traffic coming from the left would come straight through the intersection and with no traffic signs requiring it to stop, but there was one that required her to stop. She also gave the following testimony:

"Q. Were there any—looking to the left in the direction traffic would come from Eleventh Street, are there any houses or trees or shrubs there at that intersection?

A. I don't remember.

Q. Is there anything in the world that would obscure your vision to your left, if you had looked?

A. There were two curves farther down that way.

Q. About how far away are the curves?

A. I don't know. I am not a judge of distance like that.

Q. The highway is level there; isn't it?

A. As far as I know.

Q. Were those sharp curves or gradual curves?

A. One is kind of an 'S' curve, I believe.

Q. Are those curves as much as a block or two blocks away?

A. I just don't know if they are.

Q. You can't give us any idea?

A. No, sir. I could carry you and show you. Otherwise, I don't know about distance.

Q. Is there anything from the place you stopped to your left even on past the curves that would block your vision, any trees, shrubs, or any signs are [or] anything?

A. I don't believe.

Q. At the time you started up, did you see the truck coming?

A. No, sir.

Q. Did you know where it was?

A. No, sir.

Q. Do you know whether or not it was ten, fifteen, twenty feet away?

A. I don't know where it was.

Q. Is there anything that kept you from seeing it, if you looked?

A. No.

Q. Do you have any explanation as to why you couldn't see it?

A. No, sir.

Q. Did you start up fast or did you start up slow?

A. I started like I always did. I never start off fast, not what I call fast.

Q. After you started up, did you look to your left?

A. I don't remember.

Q. After you started up, if you had seen the truck coming, is there anything

that would have kept you from stopping and giving him the right-of-way?

A. No, not to keep me from stopping; I could have got on the brakes is all.

Q. Do you know how fast you were going at the time—

A. No, sir.

Q. * * * this collision took place?

A. No sir. I don't.

Q. From the time you started up, did you continue to move forward or did you slow down at any time after you started up?

A. I just changed to second gear, like I normally do.

Q. This was a car in which you shifted gears manually?

A. Yes.

Q. It wasn't automatic; was it?

A. No.

Q. Did you give any kind of signal that you were going to start up there?

A. No.

Q. Did you give the driver of the truck any warning after you stopped there, that you were going to start up and go across the highway?

A. I didn't see no truck.

Q. I assume, since you didn't give him any warning, you were going to start up—

A. No, not necessarily, if I didn't see him.

Q. How far did you move before this accident occurred?

A. I don't know.

Q. You don't know whether you moved five feet or ten feet?

A. No, sir. I don't.

Q. Fifteen feet?

A. No, sir. I don't.

Q. How about the car stopped on your right; did that car move forward, or do you know?

A. I don't know. I just sorta stopped, and that's all I know.

Q. So you don't know whether the car on your right, whether it ever started forward or not?

A. I think I do. I think it started up when I did. I'm not sure, now, about it, but I think I do—

Q. Was that car struck in any way?

A. Not that I know of.

Q. That car that was on your right; that wouldn't have obstructed your vision for the truck on your left; did it?

A. Not at all.

Q. This accident happened when it was still daylight?

A. Yes, sir.

Q. Now that Eleventh Street, that is a pretty-heavily-traveled highway; isn't it?

A. I would think so.

Q. In other words, all the traffic coming in from Silsbee on Highway 69 as well as Kountze, all of it has to come through there into Beaumont on this through street in front of you?

A. As far as I know. I don't know too much about the traffic through there, because—

Q. You never did see the truck until after the collision had already taken place?

A. No, I didn't. I certainly wouldn't have pulled out in front—out from that stop sign had I seen that truck coming.

Q. But there wasn't anything to keep you from seeing it; was there?

A. I don't know what prevented it, but I didn't see it."

Plaintiff produced no probative evidence raising issues of negligence and proximate cause or discovered peril relied upon by him for recovery. Appellant's point of error is overruled.

Judgment of the trial court is affirmed.