**Dana L. TURNER and aaNKILL 44, Inc., Appellants,**

v.

**The STATE of Texas and Rick Perry, Commissioner of the Texas Department of Agriculture, Appellees.**

No. 6–92–105–CV.

Court of Appeals of Texas, Texarkana.

Feb. 23, 1993.

Rehearing Denied March 29, 1993.

OPINION

GRANT, Justice.

The State of Texas and Rick Perry, Commissioner of the Texas Department of Agriculture, filed suit against Dana L. Turner and aaNKILL 44, Inc. seeking civil penalties and injunctive relief for alleged violations of the pesticide registration requirements of Chapter 76 of the Texas Agriculture Code. Turner appeals from a judgment favoring the State.

Turner contends that the trial court erred in disregarding the jury's findings and entering a judgment concluding that the products in question are pesticides as a matter of law. He further contends that the trial court erred in drafting the permanent injunction because it exceeds the scope of the pleadings and the evidence. The State raises three cross points in which it alleges that the trial court erred in admitting irrelevant evidence and that the jury's answers to certain questions in the charge were against the great weight and preponderance of the evidence.

In 1990, Turner developed a product designed to have a detrimental effect on fire ants. In September or October of that year, he formed a corporation, aaNKILL 44, Inc., and began to market the product. On November 28, 1990, David Inman, an inspector for the Texas Agriculture Department, served Turner with an administrative stop sale order. The stop sale order put Turner on notice that the Agriculture Department considered aaNKILL 44 to be an unregistered pesticide, and Turner ceased selling the product under that name.

In August 1991, Turner began selling a product he called Plus Water Activator ("Plus") which contained essentially the same formula that comprised aaNKILL 44. On October 10, 1991, the trial court issued a temporary restraining order which barred Turner and his corporation from selling either aaNKILL 44 or Plus. Turner then began marketing a product which he labelled "DLT Mound Leveler" and which contains essentially the same ingredients as aaNKILL 44 and Plus.

Gregory Neeley, Akin, Steele, Bush & Neeley, Longview, for appellants.

Grant Gurley, Asst. Atty. Gen., Environmental Protection Div., Austin, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

In its petition, the State alleged 579 acts of unlawful distribution of the three products discussed above. The State stipulated that it sought damages only in the amount of the minimum statutory fine of $50 per violation. The State also requested a permanent injunction preventing Turner or his corporation from distributing any of the products.

The jury returned answers to the charge indicating that aaNKILL 44 is a pesticide and that Turner committed three acts of illegal distribution in regard to that product. The jury found that neither Plus nor DLT Mound Leveler is a pesticide. The trial court granted the State's motion to disregard the jury's findings and held that Plus and DLT Mound Leveler are pesticides as a matter of law. The court entered judgment favoring the State in regard to all three products. The trial court did not find any additional instances of illegal distribution beyond the three instances found by the jury.

Turner contends that the trial court erred in disregarding the jury's findings as to Plus and DLT Mound Leveler and in entering judgment favoring the State. He does not contest the judgment as to aaN-KILL 44.

■ We have been asked to review the trial court's granting of a motion to disregard two of the jury's answers. These answers were on issues upon which the State had the burden of proof. Thus, we review the trial court's action to determine if the State established all vital facts in support of the issue as a matter of law. *See Ritchey v. Crawford,* 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).[1] The undisputed evidence shows that Turner sold the product and that the product was not registered. The only vital fact issue that Turner contests is whether the State established that Plus and DLT Mound Leveler are pesticides as a matter of law.

■ Section 76.001(18) of the Texas Agriculture Code defines a pesticide as "a substance or mixture of substances *intended to prevent, destroy, repel, or mitigate* any pest, or any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant." TEX.AGRIC. CODE ANN. § 76.001(18) (Vernon 1982) (emphasis added).

Since the Code itself does not define the word "intended," a key term in understanding this section, we look to the Code Construction Act which states that the ordinary meaning of the word should be deemed as having been intended by the Legislature. TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988). The trial court correctly did not attempt to define the word "intended" in its charge to the jury, but it did charge that words not specifically defined

---

1. This is sometimes erroneously addressed as a no evidence point. However, Turner did not have the burden of proof on this issue and even if there was no evidence introduced to support his position, the State would still not be entitled to have a motion granted to disregard a jury finding unless it had established all vital facts in support of that issue as a matter of law.

Calling matter-of-law points no evidence points is a misnomer. *See* R.W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 363 (1960). These points of error should be referred to as conclusive evidence points. *See* W. Powers, Jr. & J. Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 518 (1991). We recognize that Rule 301 of the Texas Rules of Civil Procedure refers to disregarding the jury finding on a question "that has no support in evidence." This term has been ap-plied broadly to matter-of-law challenges. *See* Roger Townsend, W. Wendell Hall, & Madelyn Dewoody, *Standards of Review and Reversible Error, in* STATE BAR OF TEXAS PROF. DEV. PROGRAM, 1 ADVANCED APPELLATE PRACTICE COURSE F (1990).

This same principle has been recognized in judgment non obstante veredicto cases in which the party moving for judgment n.o.v. had the burden of proof. *See Southwestern Bell Telephone Co. v. Hertz Equipment Rental Co.,* 533 S.W.2d 853 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Morris v. Brown,* 337 S.W.2d 759 (Tex.Civ.App.—Eastland 1960, no writ).

This legal insufficiency contention raises a matter of law point that the converse of the finding was established conclusively as a matter of law. *See* W.J. Cornelius, *Appellate Review of Sufficiency Of the Evidence Challenges In Civil and Criminal Cases,* 46 Tex.B.J. 439, 440 (1983).

by the court should be construed according to common usage.[2]

Turner asserts that the testimony that he gave at trial supports the jury's findings indicating that Plus and DLT Mound Leveler are not pesticides. Turner testified that although he originally believed that his formula killed fire ants, later experiments revealed that, in fact, it did not kill them. He said that most pesticides work by either breaking down the outer shell of the ants or by attacking their nervous systems, but that his product did neither. Instead, according to Turner, aaNKILL 44 and its progeny immobilize the ants for a while so that they cannot eat.

Turner further described the effect of his formula on the ants by saying that it "switches off [their] power," that it "stops power from getting to them," and that the ants switch off "like an electric light" and they "don't ever turn on again," unless placed in direct sunlight within four hours of having been "deactivated."

Turner further testified that he sold the formula as Plus and DLT Mound Leveler after he arrived at the conclusion that it did not actually kill the ants and was thus not a pesticide. Turner stated that the purpose of the DLT Mound Leveler was, in fact, to level mounds. He admitted, however, that this explanation "raised eyebrows" among his customers, and when customers pressed him about the formula's effect on the ants, he told them "I suppose they die." Furthermore, Turner has at no point suggested that his product may have alternative uses.[3]

We agree with the trial court that Turner's testimony, rather than supporting the jury's findings, demonstrates conclusively that Turner's formula was intended to be used to "prevent, repel, or mitigate" fire

ants. The formula kills the fire ants by preventing them from eating and this reaches the same end result as any other pesticide. Turner's statements regarding his formula are mere euphemisms for the fact that it is a pesticide.

■ This Court is bound by the principle that when a litigant admits positive facts which defeat his right to recover, and such admissions are not subsequently modified by the litigant, then he or she is conclusively bound by such admissions. *Jones v. Underwood & Weld Co.*, 406 S.W.2d 491, 493 (Tex.Civ.App.—Beaumont 1966, no writ); *see also, Texas & P. Ry. Co. v. Wood,* 145 Tex. 534, 199 S.W.2d 652 (1947) ("The testimony of a party to a suit and admissions made by him must be construed as binding upon him, and not merely as raising issues of fact.")

Here, Turner admits that his product is intended to prevent ants from eating, thus causing their death. The evidence conclusively shows that Plus and DLT Mound Leveler were sold as pesticides. Based upon Turner's judicial admissions, the trial court correctly found these products to be pesticides as a matter of law. We overrule this point of error.

In his second point of error, Turner contends that the trial court erred in drafting the injunctive order in that it exceeded the scope of the pleadings and the evidence produced at trial. Specifically, Turner complains that the language in the injunction unnecessarily enlarged the statutory definition of "distribute" and improperly defined "pesticide."

■ A permanent injunction should not be more comprehensive or restrictive than justified by the pleadings, evidence, and usages of equity. *Gonzales v. Zamora,*

---

**2.** Random House Dictionary of the English Language 991 (2nd ed. 1987) defines *intend* as: "1. to have in mind as something to be done or brought about ... 2. to design or mean for a particular purpose, use ... 3. to design to express or indicate, as by one's words; refer to...."

It defines *intended* as: "1. purposed; designed; intentional ... 2. prospective...."

**3.** At trial, Turner also presented the labels placed on his products. The Plus label features

statements such as "Don't Kill Fire Ants Stop Power From Getting To Them," "WATER IS THE ACTIVE INGREDIENT!" and "Plus produces no pesticidal effects when used as directed."

The label for DLT Mound Leveler is much simpler and suggests that you should "Rid Your Property of Unsightly and Hazardous Mounds with DLT MOUND LEVELER."

791 S.W.2d 258 (Tex.App.—Corpus Christi 1990, no writ).

In its petition, the State requested injunctive relief in order to prevent Turner from distributing aaNKILL 44, Plus, or DLT Mound Leveler, as well as any other pesticide unless it is registered with the Department of Agriculture. The only definition of "distribute" or "pesticide" in the petition is by reference to Section 76.001 of the Agriculture Code. TEX.AGRIC.CODE ANN. § 76.001 (Vernon 1982).

Section 76.001(7) defines "distribute" as "offer for sale, hold for sale, sell, barter, or supply." Section 76.001(18) defines "pesticide" as "a substance or mixture of substances intended to prevent, destroy, repel, or mitigate any pest." The trial court's order, however, states that:

### III.

. . . . .

B. In this injunction, "distribute" shall have the meaning given in Chapter 76 of the Texas Agriculture Code, namely "offer for sale, hold for sale, sell, barter, or supply", and shall include, without implying the exclusion of other conduct, the following conduct:
1) sell;
2) deliver;
3) give away;
4) give to;
5) allow to take;
6) turn over to;
7) make available to;
8) exchange for goods, services, or a promise to provide goods or services;
9) advertise;
10) market;
11) promote;
12) provide;
13) provide a sample of;
14) give permission or authorization to any other person or entity to commit any of these enumerated acts; or
15) offer to commit any of these enumerated acts, either conditionally or unconditionally.

C. In this injunction "pesticide" shall have the meaning given in Chapter 76 of the Texas Agriculture Code, namely, "any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest. . . ." In determining the intended purpose of a substance or mixture of substances, the intent that shall be examined is not the subjective intent of the actor, but rather that person's objective intent, taking into account any and all circumstances.

The State contends that the trial court correctly detailed the prohibited conduct in light of Turner's persistent attempts to find a loophole in the law. The State argues that Turner should not be allowed to complain that he was given too much notice.

The record, however, reveals no support for the expanded definition of "distribute" nor have we found any in statutory or case law. We therefore reform paragraph III.B of the injunction so that it now reads: "In this injunction, 'distribute' shall have the meaning given in Chapter 76 of the Texas Agriculture Code, namely 'offer for sale, hold for sale, sell, barter, or supply.' "

Furthermore, we see no reason for expanding the definition of "pesticide" beyond the statutory definition.[4] Paragraph III.C of the injunction is therefore reformed so that it now reads:

In this injunction 'pesticide' shall have the meaning given in Chapter 76 of the Texas Agriculture Code, namely, 'any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest.'

. Because of the foregoing holdings, which are dispositive of all issues in the case, we do not reach the cross-points filed by the State.

---

**4.** The State urges this Court to adopt the federal standard used in defining "intended" in a similar federal pesticide statute. *See N. Jonas & Co., Inc. v. U.S. Environmental Protection Agency,* 666 F.2d 829, 833 (3d Cir.1981); 7 U.S.C.A. § 136(u) (West Supp.1992). Since deciding this case does not require a definition other than the ordinary usage of the term, we do not grant the State's request.

The judgment of the trial court is affirmed in part and reformed in part.