IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-4817
_____


CHARLES MacDONALD, ET UX and
STATE OF LOUISIANA, Etc.,

Plaintiffs-Appellees,

versus

MONSANTO CO., ET AL.,

Defendants,

DOW CHEMICAL CO., ET AL.,

Defendants-Appellants.
_____

Appeal from the United States District Court for the
Eastern District of Texas
_____

(July 20, 1994)

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal raises the question of whether the labeling requirements of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y (1980 & Supp. 1993), preempt parallel state law labeling requirements. Because we find that FIFRA does indeed preempt state laws that are "different from or in addition" to FIFRA requirements, we reverse the district court's denial of summary judgment, and render judgment on this issue in favor of the defendants.

I

Plaintiff-appellee Charles MacDonald, a chemical sprayer for the Louisiana Department of Transportation and Development, suffered serious personal injuries allegedly caused by the phenoxy herbicide 2,4-D, which is produced by several different chemical companies. This herbicide was packaged in containers bearing labels approved by the Environmental Protection Agency ("EPA") pursuant to FIFRA requirements. MacDonald and his wife sued the chemical companies in Texas state court, claiming, inter alia, that the chemical companies failed, under state law, to label properly the herbicide and thereby failed, under state law, to warn him adequately of the dangers associated with 2,4-D. The defendants timely removed the suit to federal district court on diversity of citizenship grounds, and then moved for summary judgment, arguing that FIFRA preempts all state laws affecting labeling requirements. According to the defendants, because they complied with FIFRA labeling requirements (a fact uncontested in this appeal), and because FIFRA preempts state labeling requirements, they were entitled to summary judgment in their favor on the labeling issue. The district court disagreed, however, and denied their motion for summary judgment. The court held that the word "requirements" in § 136v(b) addressed only statutory or regulatory requirements--not common law requirements. See Ferebee v. Chevron Chemical Co., 736 F.2d 1529 (D.C. Cir. 1984), cert. denied, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Thus, the district court concluded that the

MacDonald's state common law causes of action based on improper labeling and failure to warn were not preempted by FIFRA. Recognizing, however, that "there were substantial grounds for difference of opinion on the issue of preemption," the district court certified the issue for interlocutory appeal. Defendants-appellants Chevron Chemical Company and Ortho Products Division of Chevron Chemical Company (referred to collectively as "Chevron"), and Dow Chemical Company ("Dow") appeal the district court's denial of summary judgment. We granted this interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1993).

                                II

     We review de novo a district court's ruling on a motion for summary judgment. FDIC v. Myers, 955 F.2d 348, 349 (5th Cir. 1992). In this case, the parties agree that there are no disputed fact questions; the sole issue presented for our consideration is purely a question of law. This issue--an issue of first impression in this circuit--is whether, under the lights of the recently decided Cipollone v. Liggett Group, Inc., ___ U.S. ___, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), FIFRA preempts state common law damage claims based upon a chemical manufacturer's failure properly to label herbicides and pesticides, and properly to warn of dangers associated with their use.

                                III

Dow and Chevron contend that FIFRA labeling requirements preempt state law requirements that relate to labeling.  The Supremacy Clause of the Constitution invalidates any state laws that "interfere with, or are contrary to" federal laws.  U.S. CONST. art. VI, cl. 2.  Because of the Supremacy Clause, a state law that conflicts with federal law is "without effect." Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532 (1991); Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128-29, 68 L.Ed.2d 576 (1981). We begin our consideration of preemption questions with the presumption that historic police powers of the states are not superseded by federal law.  Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).  The police powers at issue here--health and safety matters--are matters that historically have been areas of state regulation. See Hillsborough County v. Automated Medical Labs., Inc., 471 U.S. 707, 715-16, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). This presumption against federal preemption of such state law may be overcome if Congress intended that the federal law preempt state law.  Rice v. Santa Fe Elevator Corp., 331 U.S. at 230, 67 S.Ct. at 1152.  As the Supreme Court recently noted in Cipollone v. Liggett Group, Inc.,

> Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose.  In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal

-4-

law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

112 S.Ct. at 2617 (internal quotations and citations omitted).

In Cipollone v. Liggett Group, Inc., the plaintiff, a woman who ultimately died of lung cancer after years of smoking, sued cigarette manufacturers under the state common law tort law for failure to warn consumers of the hazards of smoking. 112 S.Ct. at 2613. The cigarette manufacturer, however, argued that the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331-1340 (1982 & Supp. 1994), preempted the state law claims. The cigarette manufacturers based their preemption argument on § 1334(b) of the Smoking Act, which provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 15 U.S.C. § 1334(b) (1982). The Supreme Court held that "[t]he phrase no `requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." Cipollone v. Liggett Group, Inc., 112 S.Ct. at 2620. The Court cautioned, however, that § 1334(b) did not preempt all common law. For example, the Court noted that the statute preempting state labeling requirements did not preempt state law obligations to avoid marketing a product with a manufacturing

-5-

defect or with a design defect.  <u>Id.</u> at 2621.  Thus, according to <u>Cipollone</u>, courts must compare the particular language of a statute's preemption provision with each common law claim asserted to determine whether the common law claim is in fact preempted.[1]  <u>Id.</u>

Applying the reasoning articulated in <u>Cipollone</u> to FIFRA and the case at hand, the conclusion is manifest:   FIFRA preempts conflicting state common law concerning  the improper labeling of herbicides, which is the only common law claim raised in this appeal.  As opinions from other courts have described, FIFRA provides a detailed scheme for regulating the content and format of labels for herbicides,[2] and it requires all herbicides sold in

---

[1]Only four Justices joined in the portion of the opinion that held that the Public Health Cigarette Smoking Act of 1969 preempted claims based upon state failure-to-warn claims. However, in his opinion concurring in part and dissenting in part, Justice Scalia, joined by Justice Thomas, stated that he agreed with the following language of the plurality opinion: "that the language of the . . . Act plainly reaches beyond [positive] enactments; that the general tort-law duties petitioner invokes against the cigarette companies can, as a general matter, impose `requirements or prohibitions' within the meaning of [§ 1334(b)]; and that the phrase `state law' as used in [§ 1334(b)] embraces State common law. . . ." <u>Cipollone v. Liggett Group, Inc.</u>, 112 S.Ct. at 2634 (citations and internal quotations omitted).  Thus, the holding of the plurality opinion that the language of § 1334(b) preempted the plaintiff's failure-to-warn claim can fairly be said to constitute the view of the Court because six members of the Court concurred in that conclusion.  <u>See</u> <u>King v. E.I. Du Pont De Nemours & Co.</u>, 996 F.2d 1346, 1349 (1st Cir.), <u>cert.</u> <u>dismissed</u>, ___ U.S. ___, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 370 n.4 (7th Cir. 1993).

[2]FIFRA governs many types of chemical substances, including for example, herbicides, fungicides, and insecticides.

the United States to be registered with the EPA.  See Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir. 1993)(discussing the details of FIFRA labeling requirements); King v. E.I. Du Pont De Nemours & Co., 996 F.2d at 1347 (discussing the details of FIFRA labeling requirements).  In an effort to preserve uniformity of laws concerning labeling, FIFRA specifically mandates that "[a] State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."  7 U.S.C. § 136v(b) (Supp. 1993) (emphasis added).  If the encompassing words of the statute standing alone do not convince the skeptics, surely Cipollone leaves no doubt but   that the FIFRA term "any requirements" makes no distinction between positive enactments and the common law.  This is not to say, however, that not all common law is preempted by FIFRA--§ 136v(b) does not preempt common law that is unconcerned with herbicide labeling, nor does it preempt those state laws concerned with herbicide labeling that do not impose any requirement "in addition to or different from" the FIFRA requirements.  See Worm v. American Cyanamid Co., 970 F.2d 1301, 1307-08 (4th Cir. 1992).  Thus, we conclude, in accord with the clear language of the statute, that § 136v(b) preempts only those state laws that impose or effect different or additional labeling requirements.[3]

_____

[3]The legislative history of FIFRA also clearly indicates that Congress intended to preempt state law in this area.

The MacDonalds argue, however, that state common law tort judgments are not "requirements":  the liable party is not "required" to change his label by a damage award, the argument goes, but may simply pay the judgment and leave the label as it is.  We think this argument is sophistry.  If plaintiffs could recover large damage awards because the herbicide was improperly labeled under state law, the undeniable practical effect would be that state law _requires_ additional labeling standards not mandated by FIFRA; it cannot be presumed that businesses wish to bring about their own economic suicide.  Consequently, such state labeling requirements would violate FIFRA's express prohibition against additional or different labeling requirements.  We thus find that the express language of FIFRA clearly indicates that Congress intended that the federal act preempt conflicting state law, including state common law tort claims.  We are far from

Furthermore, none of the legislative history distinguishes legislative enactments from common law.  For example, the original House Report by the Agriculture Committee states that "[s]tate authority to change Federal labeling and packaging is completely preempted, and state authority to further regulate `general use' pesticides is partially preempted."  H. REP. No. 92-511, 92d Cong., 1st Sess. 1, 1-2 (1972) (emphasis added).  The House Report further states that "[i]n dividing the responsibilities between the States and the Federal Government for the management of an effective pesticide program, the [House Agriculture] Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging."  Id. at 16 (emphasis added).  The Senate Agriculture and Forestry Committee Report states that § 136v(b) "preempts any State labeling or packaging requirements differing from such requirements under the Act."  S. REP. No. 92-838, 92d Cong., 2d Sess., reprinted in, 1972 U.S.S.C.A.N. 3993, 4021.

alone in reaching this conclusion. See <u>King v. E.I. Du Pont De</u> <u>Nemours & Co.</u>, 996 F.2d 1346 (1st Cir. 1993), <u>cert.</u> <u>dismissed</u>, ___ U.S. ___, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993) (holding that FIFRA preempts state common law causes of action); <u>Shaw v. Dow</u> <u>Brands, Inc.</u>, 994 F.2d 364 (7th Cir. 1993)(holding that FIFRA preempts state common law causes of action); <u>Papas v. Upjohn Co.</u>, 985 F.2d 516 (11th Cir. 1993), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993) (holding that FIFRA preempts state common law causes of action); <u>Arkansas-Platte & Gulf</u> <u>Partnership v. Van Waters & Rogers, Inc.</u>, 981 F.2d 1177 (10th Cir. 1993), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (holding that FIFRA preempts state common law causes of action); <u>but</u> <u>see</u> <u>Ferebee v. Chevron Chem. Co.</u>, 736 F.2d 1529 (D.C. Cir.), <u>cert.</u> <u>denied</u>, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984)(holding that lack of direct conflict between the state and federal regulations compels a finding that FIFRA does not preempt state common law); <u>see</u> <u>also</u> <u>Stamps v. Collagen</u> <u>Corp.</u>, 984 F.2d 1416, 1424-25 (5th Cir.), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) (holding that the analysis used in <u>Ferebee</u> did not survive the <u>Cipollone</u> decision).[4]

---

[4]The dissent suggests that we have failed "to complete the preemption analysis mandated by <u>Cipollone</u>" because we do not address "whether the specific common law claims raised in the case <u>sub</u> <u>judice</u> actually differ from or add to FIFRA's requirements." We have, however, complied with the preemption analysis mandated by <u>Cipollone</u> by determining that state law

IV

For the foregoing reasons, the decision of the district court to deny summary judgment is REVERSED, and we REMAND for entry of judgment accordingly.

---

liability based upon defective warnings would constitute an imposition of an additional or different requirement for labeling or packaging by the state.  In other words, if the MacDonalds could recover on their state law claim that the chemical manufacturers failed to provide an adequate warning--despite the fact that this herbicide's labeling had been approved by the EPA under FIFRA standards--then those additional warnings necessarily would be "in addition to or different from those required" by FIFRA.  Thus, it is unnecessary to compare specifically the common law labeling requirements asserted by the MacDonalds with FIFRA's labeling requirements.  Furthermore, if, as the defense argues, the claims of the plaintiffs concerning the labeling in this case are "entirely consistent" with FIFRA's labeling requirements, the plaintiffs can prove no basis for recovery against defendants' FIFRA's approved label.  Thus, comparing FIFRA's requirements and common law requirements is a futile exercise.

The dissent also touches upon another matter that we should mention.  To support its argument that the MacDonalds may assert their state law tort claims, the dissent points to § 136a(f)(2), which states that

> [i]n no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter.  As long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter.

7 U.S.C. § 136a(f)(2) (Supp. 1993) (emphasis added).  This provision, however, has no bearing on the question before this court.  As § 136a(f)(2) clearly states, it prohibits a manufacturer from using the fact that a label is registered with the EPA as a defense to "any offense under [FIFRA]."  See 7 U.S.C. § 136j (1980 & Supp. 1993) (listing unlawful acts under FIFRA).  A claim grounded in state common law is not an offense under FIFRA.  Thus, § 136a(f)(2) does not apply.  Finally, we reiterate that the defendants' compliance with FIFRA's labeling requirements is not  disputed.

R E M A N D E D for entry of judgment.

JOHNSON, J., concurring in part, dissenting in the judgment.

The majority correctly decides that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") preempts both positive enactments and common law claims which differ from or add to FIFRA's labeling or packaging requirements. However, the majority fails to determine whether the specific common law claims raised in the case *sub judice* actually differ from or add to FIFRA's requirements. In this writer's view, the failure to warn and failure to adequately label claims at issue here are entirely consistent with FIFRA. They are not preempted.

The Supreme Court in *Cipollone v. Liggett Group, Inc*. made clear that a finding that a federal statute preempts common law actions in general is not tantamount to a finding that the statute preempts *all* common law actions. 112 S. Ct. 2608, 2621 (1992). Under the clear guidance of *Cipollone*, Courts must determine the scope of a statute's preemption provision. *Id*. at 2618. Any state law within the scope of the provision is preempted. However, "matters beyond that reach are not preempted." *Id*. To properly review a preemption claim, therefore, Courts must "fairly but——in light of the strong presumption against preemption——narrowly construe the precise language of [the preemption provision] and . . . look to each of [the] common law claims [raised] to determine whether [they are] in fact preempted." *Id*. at 2621.

The preemption provision at issue here, entitled "Authority of States," provides the following:

(a) In general - A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity - Such State shall not impose or continue in effect any requirement for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a)-(b).  A fair, but narrow, reading of this preemption section quite readily reveals Congress' intent to restrict the comparison of state law labeling requirements to the labeling requirements enunciated in the subchapter.

The subchapter makes illegal the sale or distribution of "any pesticide which is adulterated or misbranded."  *Id*. at § 136j(a)(1)(E).  FIFRA broadly defines the term "misbranded."[5] Under section 136(q), a pesticide is misbranded if its "label does not contain a warning or caution statement which may be necessary and if complied with . . . is adequate to protect health and the environment."[6]  *Id*. at § 136(q)(1)(G).

_____

[5]I disagree with the majority's characterization of FIFRA. It does not establish a "detailed scheme for regulating the content and format of labels for herbicides."  See Maj. op at 6. While it is true that the EPA has set forth such a scheme in the Code of Federal Regulations, a thorough review of *FIFRA* reveals that no where therein did Congress authorize the EPA to establish such a scheme.  FIFRA solely provides broad, general labeling requirements.

[6]The pesticide must also be properly classified for general use, restricted use, or both, as outlined in § 136a(d) of the subchapter.  However, the classification requirements do not

Consistent with FIFRA, the MacDonalds have claimed that the labels of the pesticides in question did not contain warnings or cautions which were adequate to protect Charles MacDonald's health. Hence, their state law claims do not add to or differ from FIFRA's requirements.[7]  Concededly, the MacDonalds must overcome the presumption that registered pesticides comply with FIFRA's registration provisions.  However, under the plain language of the statute, registration of a pesticide does not conclusively prove that the pesticide was properly labeled.[8]  7 U.S.C. § 136a(f)(2).

By declining to determine whether the claims raised by the MacDonalds are consistent with FIFRA's broad labeling requirements, the majority fails to complete the preemption analysis mandated by

---

negate the requirement that pesticide labels contain adequate warnings and cautions.

[7]The state law requirements on which the MacDonalds rely may, indeed, conflict with the EPA's labeling regulations. However, as explained in footnote one, those regulations were not authorized by Congress in FIFRA.  Moreover, FIFRA clearly provides that compliance with EPA registration requirements is not tantamount to compliance with FIFRA.  *See infra* note 4. Thus, although it may conflict with the EPA's regulatory scheme, the state law in question may, in fact, be absolutely consistent with FIFRA's broad requirements.

[8]Congress undoubtedly anticipated that failure to warn causes of action would be raised, for it specifically determined that compliance with the registration requirements set forth by the Administrator of the Environmental Protection Agency would not *conclusively* establish compliance with FIFRA's labeling requirements.  7 U.S.C. § 136a(f)(2).  To the contrary, if no cancellation proceedings are in effect, registration of a pesticide only constitutes "*prima facie* evidence that the pesticide, its labeling and packaging comply with the registration provisions" outlined in the Act.  *Id*.

*Cipollone*. In so doing, the majority has improperly allowed FIFRA to trample upon state law which is entirely consistent with the requirements set forth within the Act. Our federalism dictates that we refrain from extending federal power into state territory unless Congress intended such an extension. The majority pays short shrift to the ideals of federalism and comity so salient in this case. With such, this writer cannot agree and is therefore constrained to dissent.