**Bertha ELAM, Appellant**

v.

**QUEST CHEMICAL CORPORATION,**
**Appellee.**

**No. 09-93-234 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted May 26, 1994.

Decided Oct. 6, 1994.

Rehearing Overruled Nov. 22, 1994.

March H. Coffield, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellant.

William B. Coffey, Jr., Adams, Coffey & Duesler, Beaumont, Frank Hill, Debora Beck McWilliams, Thompson & Knight, Austin, and Richard O. Faulk, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Houston, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This appeal results from a Summary Judgment entered in favor of appellee, Quest Chemical Corporation and against appellant, Bertha Elam's claims of negligence, strict liability and breach of implied warranty.

Elam, plaintiff below, contended that she suffered personal injuries from exposure to fumes emitted by a weed killer marketed by appellee Quest, called "Doom Weed Killer," while in her employment with the City of Beaumont, Texas.

Appellant specifically contends that her injuries were "proximately caused by the negligence of your defendant," (Quest Chemical Corporation being the sole appellee to this appeal). Further, that "Doom Weed Killer" was defective and unreasonably dangerous for its intended use (strict liability) and that Quest breached certain implied warranties due appellant.

Quest defends these allegations contending that the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C.A. § 136, *et seq.*, preempts any and all state-based claims which focus upon "inadequate labeling" or "failure to warn" theories of recovery.

Our standard of review of this summary judgment matter remains unchanged even though faced with this federal preemption issue. It is incumbent upon Quest to show that there is no genuine issue of material fact and its entitlement to judgment as a matter of law; evidence favorable to the non-movant Elam, will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in non-movant's favor. *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546 (Tex.1985).

Whether summary judgment is appropriate in this case necessarily requires this Court's construction of 7 U.S.C.A. § 136v which provides:

(a) In General. A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity. Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

In *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), the United States Supreme Court held that FIFRA did not preempt regulation of pesticides by local governments. In so holding, the Court declared the following: "As we have also made plain, local use permit regulations—*unlike labeling* or certification—do not fall within an area that FIFRA's 'program' pre-empts or even plainly addresses." (emphasis added) *Mortier, supra,* 501 U.S. at 615, 111 S.Ct. at 2487, 115 L.Ed.2d at 549.

In *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1024–1025 (5th Cir.1994), the Court of Appeals applied the reasoning articulated in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in reaching the following decision:

If the encompassing words of the statute [§ 136v(b) ] standing alone do not convince the skeptics, surely *Cipollone* leaves no doubt but that the FIFRA term "any requirements" makes no distinction between positive enactments and the common law. This is not to say, however, that not all common law is preempted by FIFRA— § 136v(b) does not preempt common law that is unconcerned with herbicide labeling, nor does it preempt those state laws concerned with herbicide labeling that do not impose any requirement "in addition to or different from" the FIFRA requirements. *See Worm v. American Cyanamid Co.,* 970 F.2d 1301, 1307–1308 (4th Cir.

1992). Thus, we conclude, in accord with the clear language of the statute, that § 136v(b) preempts only those state laws that impose or effect different or additional labeling requirements. [footnote omitted]

■ Based upon the above cited authority, we find that FIFRA preempts all State common law tort suits against manufacturers of EPA-registered pesticides where such actions are grounded entirely in or based solely upon claims relating directly or indirectly to labeling.

■ In our present case, appellant's pleadings do not directly reference appellee's labeling of "Doom Weed Killer." However, regarding appellant's negligence cause of action, Quest propounded the following interrogatory:

*INTERROGATORY NO. 26:* In Paragraph II of your Original Petition you allege that Quest committed acts of negligence. Please state the following concerning this allegation:

(a) state the specific facts or opinion on which you rely to support this allegation;

(b) describe in detail each negligent act you allege was committed by Defendant;

(c) identify each person who has personal knowledge of the facts supporting this allegation.

The following constitutes appellant's answer to Interrogatory No. 26:

A. There is no warning on the can that exposure to the fumes can cause injury to persons situated such as plaintiff.

B. Failure to warn.

C. The plaintiff and any other.

In response to Quest's motion for summary judgment, appellant, then plaintiff, presented and relied upon the affidavit of George J. Cvejanovich as an expert witness by affidavit. Mr. Cvejanovich's qualifications indicated twenty years Industrial Hygienist, thirteen years Analytical Chemist/Analytical Lab Supervisor, six years Analyzer Engineer, five years Instrument Engineer, ten years University Professor. The affidavit of Mr. Cvejanovich provided in substance the following:

I have reviewed the discovery materials developed to date in this case, as well as the label provided by Quest Chemical Corporation for its product, "Doom Weed Killer". I am familiar with applicable federal statutes regarding the product label in question.

On the basis of my background, knowledge and experience, it is my opinion that the label in question does not comply with applicable federal law and does not adequately warn the user of the dangers associated with this product. It is also my opinion that Quest should have supplied complete instructions for the safe use of this product and failed to do so.

■ In reviewing the substance of Mr. Cvejanovich's affidavit, it is clear that this expert is not qualified to testify in matters of law regarding the compliance or noncompliance of the subject label to applicable federal law. Clearly, the remainder of the substantive portion of Cvejanovich's affidavit speaks to the adequacy or inadequacy of the warning label. Mr. Cvejanovich's evidence goes directly to that which has been preempted by FIFRA. Had appellant's negligence allegations focused upon failing to test and properly inspect "Doom Weed Killer," our conclusion would no doubt be different.

If there exists a bright line regarding FIFRA preemption, it illuminates strictly and exclusively as to actions which directly or indirectly focus upon the label or packaging. It is, of course, the indirect attack which cast dark shadows upon that illusive bright line. In our case, appellant's negligence claims directly pursue the labeling or packaging process, therefore we must affirm the trial court's granting of summary judgment as to appellant's actions for negligence. Point of error one is overruled.

Appellant's remaining causes of action are those of strict liability and breach of implied warranty. In view of appellant's response to Quest's motion for summary judgment, we consider Mr. Cvejanovich's affidavit as no evidentiary benefit to appellant regarding the strict liability theory of recovery. We must therefore look to other responses before the trial court in determining whether or not a fact issue exists as to a manufacturer's

defect in "Doom Weed Killer" which could, upon factual determination, determine this chemical to be unreasonably dangerous.

Regarding appellant's pleadings on strict liability and breach of warranties, Quest propounded the following interrogatories to appellant:

*INTERROGATORY NO. 27:* In Paragraph III of your Original Petition, you allege that the product sold and manufactured by Quest was defective and unreasonably dangerous. Please state the following concerning this allegation:

(a) state the specific facts or opinions on which you rely to support this allegation;

(b) describe in detail each defect which you allege existed in the product;

(c) identify each person who has personal knowledge of the facts supporting this allegation.

*INTERROGATORY NO. 28:* In Paragraph III of your Original Petition, you allege that Defendant breached certain warranties in regard to the sale of the product. Please answer the following interrogatories with respect to such allegation.

(a) state the specific facts or opinions on which you rely to support this allegation;

(b) describe in detail each warranty which you allege was breached by Quest;

(c) identify each person who has personal knowledge of the facts supporting this allegation.

In response to Interrogatories Nos. 27 and 28, appellant responded as follows:

27. A. I became extremely ill and have had to have surgery on my vocal cords in an effort to restore my voice.

B. The product was unreasonably dangerous for the purpose for which it was intended and thereby defective. There was no warning to persons situated such as plaintiff.

C. The Plaintiff.

28. A. The defendant produced a product that was not reasonably safe for the purpose for which it was intended.

Except for appellant's answer to Interrogatory 27–B, "There was no warning to persons situated such as plaintiff," appellant raises questions outside the intended umbra of FIFRA. Again, FIFRA extends only to claims relating to labeling and packaging. It is inconceivable that our United States Congress intended that those manufacturers of chemical products covered by 7 USCA 136, *et seq.*, should *carte blanche* escape socio/economic accountability where evidence preponderates that said products are unreasonably dangerous or that implied warranties have been violated.

■ Appellee, in its motion for summary judgment, fails to preclude claims by appellant that "Doom Weed Killer" is, in fact, unreasonably dangerous for its intended purpose and thereby defective. *See Bingham v. Terminix Intern. Co., L.P.*, 850 F.Supp. 516 (S.D.Miss.1994).

■ Further, appellee failed to conclusively show that appellant's breach of warranty claims were predicated upon labeling and packaging deficiencies. Such being the case, FIFRA does not preclude nor preempt state common law claims for breach of implied warranty of merchantability. *See Monsanto Co., supra*, 27 F.3d at 1024–1025.

■ In conclusion, we must address appellant's contention that "Doom Weed Killer" labeling failed to comply with federal law. Appellant contends that "Doom" is not properly registered with the United States Environmental Protection Agency (EPA), therefore, FIFRA affords no preemptive protection to Quest.

The EPA, not Quest Chemical, determined what warnings were placed on Doom's label. Pursuant to 7 U.S.C.A. § 136a(c)(1)(C),[1] Quest submitted its proposed labeling for Doom to the EPA as a part of the registration process. The EPA required modifica-

---

1. In this section, FIFRA requires that "Each applicant for registration of a pesticide shall file with the Administrator a statement which includes ... a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use[.]" 7 U.S.C.A. § 136a(c)(1)(C).

tions to the proposed label and, by correspondence dated April 28, 1982 (the "EPA Letter"), the EPA dictated the language that was to appear on Doom's label. Once Quest modified the label pursuant to the EPA instructions, the EPA, by correspondence dated August 4, 1982 (the "EPA Registration Letter"), approved Doom's registration.

Elam argues that Doom was only conditionally registered and implies that somehow the EPA failed to approve Doom's label or may have failed to properly register Doom, however, such is not the case. The EPA Letter states that Doom "will be acceptable for registration" under FIFRA provided that Quest will:

1. Agree *in writing* that you will submit and/or cite all data required for registration/reregistration of your product under FIFRA Section 3(c)(5) when the Agency requires all registrants of similar products to submit such data.

If these conditions are not complied with after the registration is issued, the registration will be subject to cancellation in accordance with Section 6(e) of the Act.

2. Submit your final printed labeling, incorporating the following revisions, within 75 days. (If finished labeling cannot be furnished within the 75-day period, an extension should be requested.)

a. Add an acid equivalent substatement for 2, 4-D to the ingredient statement. We believe the acid equivalent value would be 0.35% for this product.

b. Place the Statement of Practical Treatment under the Hazards to Humans and Domestic Animals subsection. In the first paragraph of that section, revise the sentence to read: Remove and wash contaminated clothing before re-use.

The appropriate signal word for this product would appear to be Warning. Refer to the enclosed rules concerning child resistant packaging requirements for products distributed for the home environment.

c. Under ENVIRONMENTAL HAZARDS, you may delete the first sentence. Place the statement "Do not store near fertilizers, seeds, insecticides or fungicides under the STORAGE AND DISPOSAL section. Since this product is intended for industrial use as well as homeowner use, expand this section appropriately as indicated on the attached sheet. The present statement could be used for stocks intended for the homeowner market.

d. Change the reference to Soil Sterilant to read "semi-soil sterilant."

The certification statement must be submitted prior to registration.

"EPA Registration No. 44446-24" is being reserved for this product. This must appear on the finished label. The "Notice of Registration" will be issued when five (5) acceptable finished labels are submitted as provided in 40 CFR Section 162.10(a)(6) (40 FR 28278, July 3, 1975). Refer to the A-79 Enclosure for a further description of finished labeling.

This letter does *not* constitute registration and the product may *not* be lawfully marketed until it is registered. (emphasis in original)

> Sincerely yours,
> Richard F. Mountfort
> Product Manager (23)
> Fungicide–Herbicide Branch
> Registration Division (TS-767)

The EPA Registration Letter states:

This product is conditionally registered in accordance with the provisions of Section 3(c)(7)(A) of the Act, since you have agreed that you will submit and/or cite all data required for registration/reregistration of your product under FIFRA Section 3(c)(5) when the Agency requires all registrants of similar products to submit such data.

If these conditions are not complied with, the registration will be subject to cancellation in accordance with Section 6(e) of the Act.

Nothing in these letters suggests that the EPA did not approve Doom's label. To the contrary, the only reasonable interpretation of the EPA Letter and the EPA Registration Letter is that Doom's label was approved. The affidavit of Carl Hubble, in support of appellee's motion for summary judgment,

(Hubble Affidavit) states that "Doom is registered in accordance with applicable EPA regulations." Attached to the Hubble Affidavit as Exhibit "2" is a copy of the modified label which was submitted to and approved by the EPA, and which was placed on the Doom product.

Both the EPA Letter and the EPA Registration Letter contain language indicating that Doom was conditionally registered in accordance with the provisions of Section 3(c)(7)(A) of FIFRA, subject to the understanding that additional data would be submitted under FIFRA Section 3(c)(5) "when the Agency requires all registrants of similar products to submit such data."

Although the EPA Registration Letter suggests that the EPA might require additional data in the future and might revoke Doom's registration if such data is not supplied, there is no evidence that EPA ever did require data or cancel Doom's registration. We hold that the two EPA letters and the Hubble Affidavit constitute conclusive evidence that Doom's registration has not been cancelled.

 Elam submitted a one-page affidavit in which George Cvejanovich states that "it is my opinion that the label in question does not comply with applicable federal law." Dr. Cvejanovich's affidavit is not competent summary judgment evidence because he states no facts or reasons for his opinion, but simply asserts a legal conclusion. "Affidavits consisting only of conclusions are insufficient to raise an issue of fact." *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984).[2] Dr. Cvejanovich's bare legal conclusion fails to create a fact issue as a matter of law.

For reasons heretofore set forth, this Court overrules appellant's point of error one which contends trial court error in granting summary judgment on grounds that appellant's failure to warn claims are preempted and barred by FIFRA. Our overruling of point of error one is limited to appellant's negligence cause of action. Appellant's contention that the labeling of "Doom Weed Killer" failed to comply with federal law is also overruled.

Appellant's point of error two is sustained for reason that appellee failed to extinguish all fact issues relating to appellant's strict liability and breach of warranty claims. The trial court erred in granting summary judgment declaring these State causes of action preempted by FIFRA.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

2. *See also Watkins v. Hammerman & Gainer*, 814 S.W.2d 867, 870 (Tex.App.—Austin 1991, no writ) ("An affidavit must set forth facts, not legal conclusions."); *Murphy v. Galveston County*, 788 S.W.2d 938, 939 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (same). As a result, Dr. Cvejanovich's affidavit is incompetent as summary judgment evidence regardless of whether appellee objected to its submission. An affidavit that contains only legal conclusions is substantively deficient, *Bell v. Moores*, 832 S.W.2d 749, 756 (Tex.App.—Houston [14th Dist.] 1992, writ denied), and although "formal deficiencies" in an affidavit can be waived if not raised in the trial court, "substantive deficiencies" cannot be waived. *Elam v. Yale Clinic*, 783 S.W.2d 638, 643 (Tex.App.—Houston [14th Dist.] 1989, no writ). Dr. Cvejanovich's affidavit is simply *no* evidence for summary judgment purposes.