**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-40133
(Summary Calendar)
_____


CHARLES MACDONALD and
WINONA MACDONALD,

                                        Plaintiffs-Appellants,


STATE OF LOUISIANA, through
the Department of Transportation
and Development

                                        Intervenor-Plaintiff-Appellant,

                              versus

MONSANTO COMPANY, ET AL.,

                                        Defendants,

DOW CHEMICAL COMPANY,

                                        Defendant-Appellee.
_____

            Appeal from United States District Court
               from the Eastern District of Texas
                        (1:91-CV-162)
_____
                    September 13, 1995

Before DUHÉ, WIENER and STEWART, Circuit Judges.

PER CURIAM:[*]

---

[*]    Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

This is a diversity case involving a products liability claim for personal injuries allegedly resulting from the use of an herbicide manufactured by Dow. Plaintiffs' petition listed numerous bases for recovery under a products liability theory. Because we find that plaintiffs failed to establish that any of its claims warranted trial on the merits, we affirm the district court's entry of summary judgment in favor of Dow.

I.

This is our second occasion to address the dispute between the parties in this case. In MacDonald v. Monsanto, 27 F.3d 1021 (5th Cir. 1994) (*MacDonald I*), we reversed the district court's denial of the motion for summary judgment filed by Dow and Chevron[1] as to any of plaintiffs' claims which related to labeling requirements and the failure to warn, because we concluded that such claims are preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y. We rendered summary judgment in favor of Dow and Chevron as to these issues and remanded the case.

Subsequently, Dow brought another motion for summary judgment as to the remaining claims against it, arguing, *inter alia,* that plaintiffs' remaining claims are not actionable under the Louisiana Products Liability Act ("LPLA"), La.R.S. 9:2800.51 *et seq.*)[2] or under pre-LPLA law.

---

[1]Chevron was dismissed from the case pursuant to plaintiffs' motion to nonsuit.

[2]Although plaintiffs' suit originally was filed in Texas state court and then removed to federal district court in Texas on the basis of diversity, the parties agree that Louisiana law is applicable to the case, presumably because the alleged exposure to the herbicide occurred in Louisiana.

II.

The standard of review for a summary judgment is well settled. We review the record de novo to ascertain whether any genuine issue exists as to any material fact and, upon finding none, to ascertain whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P.56(c); Miles v. American Tel. & Tel. Co., 703 F. 2d 193 (5th Cir. 1983). Without weighing the evidence, assessing its probative value, or resolving any factual disputes, id., we merely search the record for resolution-determinative factual disputes. Kennett-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980). We review district court determinations of state law de novo. Salve Regina College v. Russell, ___U.S. ___, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

III.

The LPLA expressly states at Section 2800.52 that the Act establishes the exclusive theories of liability for manufacturers for damage caused by their products. Thus, in order to recover under the LPLA, a plaintiff is limited to the distinct theories of recovery enumerated in the Act.

The only claims forwarded by plaintiffs which reasonably could be construed to have survived *MacDonald I* are (1) the failure to test properly, (2) the failure to provide safety equipment or devices, and (3) the claim that the product was unreasonably dangerous. Dow's position was that plaintiffs' products liability claims regarding the failure to test, failure to equip, and the

3

unreasonably dangerous nature of the product did not fall within the purview of the LPLA. The LPLA does not recognize a cause of action for failure to test or failure to equip, except insofar as the failure to test or equip renders the product unreasonably dangerous. Under the LPLA, in order to maintain an action against a manufacturer for damages resulting from an unreasonably dangerous product, a plaintiff must show that either (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous due to inadequate warnings; (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer. *See* La. R.S. 9:2800.54.

Our opinion in *MacDonald I* renders the part of the statute pertaining to inadequate warnings inapplicable in this case. There has been no allegation by plaintiff that the product did not conform to an express warranty. Thus, to recover under the LPLA due to the unreasonably dangerous nature of the product, in this case plaintiffs would have to show that the product is unreasonably dangerous in construction or composition or that it is unreasonably dangerous in design. In order to make out a claim that a product was unreasonably dangerous in construction or composition, the plaintiff would have to prove that the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. *See* La.R.S. 9:2800.55. There has been no allegation that the herbicide 2,4-D allegedly

4

manufactured by Dow and used by plaintiff was defective because it differed from other 2,4-D manufactured by Dow.  Thus, this theory of recovery is not available to plaintiffs.

The final theory of recovery under the LPLA upon which plaintiffs could arguably rely is that the product was unreasonably dangerous in design.  Under the LPLA, a plaintiff cannot recover on the basis that a product is unreasonably dangerous in design unless he can prove that, at the time the product left the manufacturer's control, there existed an alternative design for the product that was capable of preventing the claimant's damage.  Dow argued in its motion for summary judgment that 2,4-D is a distinct chemical composition, and that any alternative design for it would create an altogether different chemical.  Thus, Dow argued that it would be impossible for plaintiffs to present any alternative design for 2,4-D.  With all the theories of recovery under the LPLA having been eliminated, Dow contended that plaintiffs therefore could not prove that the product was unreasonably dangerous under the LPLA.

In its motion for summary judgment, Dow presented alternative arguments in the event that the LPLA was deemed inapplicable by the district court.  As noted above, the applicability of the LPLA is in dispute because some of the alleged exposure to the herbicide occurred prior to the effective date of the Act, and some of it occurred subsequent to the effective date of the Act.

With regard to the allegation that Dow failed to adequately test its product, Dow first argued that even under pre-LPLA law

5

there was no independent action for failure to test a product.[3] Moreover, Dow claimed that plaintiffs had presented no competent summary judgment evidence that a test exists which should have been performed which would have produced identifiable results. Dow pointed out that plaintiffs had acknowledged in their answers to interrogatories that Dow had not violated any industry standard. Dow also presented summary judgment evidence showing that Dow conducted extensive tests on 2,4-D, including tests involving neurotoxicity and polyneuropathy.[4]

As to plaintiffs' allegation that Dow failed to properly equip its product with proper safety equipment or devices, Dow pointed out that MacDonald admitted he had been provided protective eye wear, a respirator, a protective apron, and rubber gloves. Plaintiffs did not identify what particular equipment or devices should have been supplied to MacDonald and were not, nor have they shown that the failure to furnish such devices or equipment was a proximate cause of damages. Again, Dow also pointed out that plaintiffs have made no allegation that Dow violated any industry standard.

---

[3]Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 115 (La. 1986), the leading pre-LPLA products liability case, limited its consideration of the duty to test to theories based upon design defect and a manufacturer's duty to warn. Thus, even under pre-Act law, the failure to properly test must result in either a defect or a failure to warn, and a plaintiff must proceed under one of these theories. Accordingly, the failure to test *per se* does not give rise to a cause of action except insofar as it renders the product unreasonably dangerous.

[4]These tests relate to the physical injuries which McDonald alleges he suffered.

6

With regard to the claim that the product was unreasonably dangerous in nature, Dow argued that, even under pre-LPLA law, plaintiffs would have to prove that the product was unreasonably dangerous *per se*, unreasonably dangerous in construction or composition, unreasonably dangerous due to inadequate warnings, or unreasonably dangerous because of its design.  Halphen v. Johns-Manville, *supra*, 484 So.2d at 115.  Plaintiffs did not plead that the product was unreasonably dangerous *per se*.[5]  Moreover, as discussed above, they have not alleged that this 2,4-D deviated from other formulations of the product manufactured by Dow and was thus unreasonably dangerous in composition; thus, even under pre-LPLA law, Dow contended that these theories of recovery were not available to plaintiffs.  Thus, Dow maintained that plaintiffs were limited under pre-LPLA law, just as they would be limited under the LPLA, to a claim that the product was defective in design.  Under the pre-LPLA law in a defective design case, plaintiffs would have to prove that there was a feasible way to produce the product with less harmful consequences.  *Id.*  Dow maintained that plaintiffs have adduced no summary judgment to support such an allegation.

As an additional basis for summary judgment, Dow included in its motion a detailed discussion of its allegation that plaintiffs have failed to prove that MacDonald was exposed to Dow's 2,4-D. The Louisiana Department of Transportation, for whom MacDonald

---

[5]The term "unreasonably dangerous *per se*" was somewhat of a term of art under pre-LPLA law.  Certain products, by their very nature, were deemed by the courts to be unreasonably dangerous *per se.*  No Louisiana court has ever deemed the herbicide 2,4-D unreasonably dangerous *per se*.

7

worked when he was allegedly exposed to 2,4-D, purchased product made by several different manufacturers during the relevant time periods. Thus, Dow maintained that plaintiffs could not link Dow to the 2,4-D to which MacDonald was exposed. A threshold inquiry in any products liability case is that the product was indeed manufactured by the defendant manufacturer. Dow maintained that Louisiana has yet to adopt the "market share" theory of liability that has been recognized in other jurisdictions, which would allow recovery even in the absence of specific proof that a particular manufacturer manufactured the product which injured the plaintiff.

Plaintiffs' response to Dow's motion for summary judgment consisted of only three and a quarter pages and wholly did not address many of the contentions raised by Dow. Plaintiffs' relied upon a Fourth Circuit case, Worm v. American Cyanamid Co., 5 F.3d 744, 749 (4th Cir. 1993), and Williams v. State, 640 So. 2d 365, 368 (La. 1st Cir. 1994) for the proposition that its claims for negligent testing, formulation, and manufacture are not preempted by FIFRA. However, plaintiffs' response begged the question of whether their claims could survive summary judgment. Moreover, plaintiffs did not even argue, much less produce any competent summary judgment evidence, to establish that under Louisiana law their claims could survive a summary judgment motion. For example, as Dow pointed out, plaintiffs have not pointed to a particular test which was done improperly or which was not done on the product, and which would have produced results which would have prevented plaintiffs' injuries. Also, as to plaintiffs' claims for

failure to equip, plaintiffs feebly responded merely that the failure to equip or provide safety mechanisms would be actionable under pre-LPLA law, without citing any authority. Plaintiffs did not forward any summary judgment evidence to indicate what safety measures or equipment Dow should have provided but did not. Under the pre-LPLA law and the LPLA itself, in a defective design case[6], the plaintiff must show either that there was a feasible way to market the product with less harmful consequences (under pre-LPLA law) or that an alternative design actually already existed at the time the product left the manufacturer's control (under the LPLA). In their response to Dow's motion for summary judgment, plaintiffs did not provide even a scintilla of <u>argument</u>, much less <u>evidence</u>, illustrating how they contend the product could have been manufactured to make it less dangerous, nor did they even describe or present evidence as to how they contend the product caused the plaintiffs' injuries.

Finally, in their response to the motion for summary judgment, plaintiffs did respond to Dow's allegations that the LPLA applied to this case and that plaintiffs could not trace the 2,4-D used by MacDonald to Dow. They pointed out, using Dow's own summary judgment evidence, that the LPLA might not apply because some of the herbicide spraying occurred prior to the effective date of the LPLA. They also attempted to trace sales of Dow's product to Bel

---

[6]As alluded to above, plaintiffs' claims that the herbicide lacked the necessary safety devices or equipment to make it safe for use is tantamount to a claim that the product, as sold, was not designed properly.

9

Chemical, who in turned sold product to the Louisiana Department of Transportation and Development, where MacDonald was exposed to 2,4-D.

The district court granted Dow's motion for summary judgment as to all of plaintiffs' remaining claims, without giving reasons. Thus, this Court cannot discern whether the motion was granted due to plaintiffs' failure to trace the product back to Dow or because plaintiffs did not forward competent summary judgment evidence to establish that there are genuine issues of material fact surrounding their claims which would have entitled them to trial on the merits.

Plaintiffs have appealed the grant of summary judgment, filing a four and a half page brief to this Court in a case in which the record comprises nearly a thousand pages. Plaintiffs' brief merely revisits the issue pertaining to linking the product to Dow and the issue of the applicability of the LPLA. The brief also contains a few vague assertions regarding plaintiffs' claims for failure to test and failure to equip. For example, plaintiffs again claim that claims for negligent testing, formulation, and manufacture are not preempted by FIFRA, citing Worm, *supra*, and Williams, *supra*, which cited Worm. Plaintiffs' assertions beg the question of what genuine issue of material fact exists surrounding its claims of failure to test, failure to equip, and design defect. Plaintiffs have failed to adduce any summary judgment evidence to even suggest that their claims are viable under either pre-LPLA law or the LPLA. Even in their brief to this court, plaintiffs continue to resort to

10

such vague allegations such as "a fact issue exists that if Appellee had provided some type of safety equipment then this incident could have been avoided (emphasis added)."  Plaintiffs adduced no evidence or argument to enable this court to even remotely discern what safety equipment or device plaintiffs contend might have prevented plaintiffs' injuries.  The same holds true for plaintiffs' allegations concerning the failure to test and the unreasonably dangerous nature of the product.  Moreover, plaintiffs did not even attempt to brief these latter issues or even try to explain to this court what tests Dow should have conducted on the product, or how Dow might have manufactured an herbicide which would be less dangerous than 2,4-D.  On that basis alone, we could consider the issues waived.  *See* Yohey v. Collins, 985 F.2d 222, 224 (5th Cir. 1993).

IV.

In any event, we conclude that summary judgment was properly granted in favor of Dow as to all claims surviving MacDonald I, because plaintiffs failed to adduce any summary judgment evidence in its response to Dow's motion for summary judgment which would establish that its claims warranted trial on the merits.

Federal Rule of Civil Procedure 56(e) provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so

11

respond, summary judgment, if appropriate, shall be entered against the adverse party (emphasis added).

Even if we were to resolve in plaintiffs' favor the issue of the applicability of the LPLA and the plaintiffs' ability to link Dow to the product to which MacDonald was exposed, we would be unable and unwilling to reverse the summary judgment granted in favor of Dow because plaintiffs have for the most part rested upon the bald, vague allegations in their pleadings. Their response to Dow's motion for summary judgment is completely devoid of any evidence which would permit their claims of negligent testing, formulation and manufacture of the herbicide to survive summary judgment, under either pre-LPLA or post-LPLA law. Accordingly, under Rule 56(e), the district court correctly entered summary judgment in favor of Dow. It is not necessary that we reach the alternative argument forwarded by Dow regarding plaintiffs' failure to link Dow to the product to which MacDonald was exposed. Our determination that plaintiffs' claims cannot survive summary judgment under either pre-LPLA law or the LPLA itself pretermits any further discussion of the applicability of the LPLA. AFFIRMED.