**Dana L. TURNER, Plaintiff,**

v.

**The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; Plant Board of the Mississippi Department of Agriculture, Defendants.**

Civ. A. No. 3:93–cv–912WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 30, 1994.

712

Dana L. Turner, pro se.

Robert G. Anderson, U.S. Attorney's Office, Ricky Lee Bogan, Office of the Atty. Gen., Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court are several dispositive motions filed by the parties to this action. The gravamen of this dispute is whether plaintiff, Dana L. Turner, will be permitted to continue marketing his product, known as "DLT Mound Leveler," in the State of Mississippi without registering it with the United States Environmental Protection Agency

(hereinafter "EPA") as a pesticide. The EPA and the Plant Board of the Mississippi Department of Agriculture (hereinafter "State") believe that the DLT Mound Leveler is a pesticide, subject to the Federal Insecticide, Fungicide, and Rodenticide Act (hereinafter "FIFRA"), 7 U.S.C. § 136 *et seq.* (1988) while plaintiff contends that it is merely a soil amendment product outside the reach of FIFRA. Plaintiff Dana L. Turner (hereinafter "Turner") has filed a motion, an amended motion, and a second amended motion for summary judgment pursuant to Rule 56(a),[1] Federal Rules of Civil Procedure. Defendant EPA has filed a motion to dismiss this action, accusing Turner of failing to effect proper service upon the United States as required by Rule 4(d)(4)[2] and 4(d)(5),[3] Federal Rules of Civil Procedure. EPA also has filed a cross-motion for summary judgment under Rule 56(b)[4] on the ground that the EPA was authorized to "issue stop sale, use, or removal orders" (hereinafter ("SSUROs")) against plaintiff's product. Finally, the State has filed motions to dismiss this action on the grounds that the Eleventh Amendment[5] to the United States Constitution bars this action and that the intended use and label of

plaintiff's product are clearly pesticidal in nature.

Having considered the motions, responses, supplemental motions, exhibits, affidavits, and all relevant submissions of record, and having heard oral argument of the parties, the court finds that all of the defendants' motions are meritorious and should be granted. The court finds otherwise relative to plaintiff's motions, namely that they are not well taken and must be denied.

## I. *Parties and Jurisdiction*

Plaintiff Dana L. Turner is a citizen of the State of Mississippi. Defendant EPA is an agency of the United States Government responsible for regulating certain pesticides manufactured, marketed and distributed in Mississippi and the other States. The Plant Board of the Mississippi Department of Agriculture is an agency of the State of Mississippi which provides inspection reports to the EPA of certain pesticides displayed and marketed within the State of Mississippi.

Because the United States is a defendant in this action, this court is satisfied that it

1. Rule 56(a) of the Federal Rules of Civil Procedure provides:
 (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

2. Rule 4(d) has been amended and reorganized under Rule 4(i). *See* Fed.R.Civ.P. 4(i)(1)(A) & (i)(2) (effective Dec. 1, 1993). However, because service was attempted when the former version of Rule 4 was in effect, the former version governs this dispute.
 Rule 4(d)(4) provides in pertinent part:
 Upon the United States, by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or

agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified to such officer or agency.

3. The former version of Rule 4(d)(5) provides in pertinent part:
 Upon an officer or agency of the United States, by serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency.

4. Rule 56(b) of the Federal Rules of Civil Procedure provides:
 (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

5. The Eleventh Amendment states that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

has jurisdiction over this dispute pursuant to 28 U.S.C. § 1346(a)(2).[6]

## II. *Findings of Fact*

FIFRA details a procedure for the registration of pesticides with the EPA, *see* 7 U.S.C. § 136a(c), and provides that "no person in any State may distribute or sell to any person any pesticide that is not registered under this subchapter." 7 U.S.C. § 136a(a). Pursuant to this authority, the EPA is authorized to issue SSUROs to enjoin persons from distributing or selling pesticides in violation of FIFRA. 7 U.S.C. § 136k(a).

FIFRA defines the term "pesticide" as "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest." 7 U.S.C. § 136(u). A substance is considered to be a pesticide requiring registration if:

> (a) The person who distributes or sells the substance ... implies (by labeling or otherwise):

> > (1) That the substance ... can or should be used as a pesticide ... or

> (b) The substance consists of or contains one or more active ingredients and has no significant commercially valuable use as distributed or sold other than (1) use for pesticidal purpose ... or

> (c) The person who distributes or sells the substance has actual or constructive knowledge that the substance will be used, or is intended to be used, for a pesticidal purpose.

40 C.F.R. § 152.15.

Plaintiff distributed and sold his product, DLT Mound Leveler, in Mississippi without registering it with EPA as a pesticide. EPA investigated the product and determined that it was a pesticide based on a number of factors. The product label implied an intent to control fire ants. A picture of a fire-breathing fire ant appeared on the label above a caption that read: "[G]ive Fire Ants an inch ... and they'll take a yard!" In addition, the directions for use were similar to directions for mound drench products registered with EPA as pesticides for the control of fire ants. Finally, the label did not make any soil amendment or plant nutrient claims. TRO Hearing Trans. at 30.

EPA also found that the formula for DLT Mound Leveler was substantially similar to the formula for "aaNKILL 44," a product that Turner previously had submitted to EPA for registration as a pesticide designed to control fire ants. The aaNKILL 44 label expressly stated: "FOR FIRE ANT CONTROL—A Mound Treatment."

The inspection reports from the State of Mississippi indicated that DLT Mound Leveler was being displayed and marketed along with other pesticides used to control fire ants, and not with soil amendment or plant nutrient products. TRO Hearing Trans., Testimony of Carlton Layne, at 6, 11. Accordingly, based upon the above observations, EPA concluded that DLT Mound Leveler had no commercially viable use other than its use as a pesticide. *See id.* at 10. Once EPA determined that DLT Mound Leveler was a pesticide, it issued SSUROs to several retailers that were marketing DLT Mound Leveler throughout the State of Mississippi.

On April 23, 1993, Turner filed this lawsuit and asked this court to issue a temporary restraining order ("TRO") under FIFRA to enjoin EPA and the State from restricting the sale and distribution of DLT Mound Leveler. Turner named the State as an agent of EPA and only served the Deputy Commissioner of the Mississippi Department of Agriculture with a copy of the TRO. The court notes that the State is not EPA's agent, and the State did not issue any stop sale orders against any product manufactured by Turner.

In his application for a TRO, Turner claimed that DLT Mound Leveler was not a pesticide subject to FIFRA registration. On May 5, 1993, this court held an evidentiary hearing and denied Turner's TRO application

---

**6.** Title 28 U.S.C. § 1346(a)(2) provides in pertinent part that:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

> > (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress,....

after considering the evidence under the factors set out in *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

Thereafter, the parties filed a number of dispositive motions: EPA filed first a Motion to Dismiss based on Turner's alleged failure to effect proper service upon the United States, then a Motion to Dismiss based upon Turner's noncompliance with Rule 4(j), which requires service upon all defendants within 120 days. Then, EPA filed its Cross–Motion for Summary Judgment. The State of Mississippi filed its own Motion to Dismiss. Meanwhile, Turner filed his Motion and Amended Motion for Summary Judgment. In his Motion for Summary Judgment, Turner set out his legal and factual arguments for a victory on the merits of his lawsuit. In his Amended Motion for Summary Judgment, Turner alleged that EPA was guilty of criminal misconduct for refusing to recognize his product as a non-pesticide.

On March 15, 1994, this court held a hearing on the outstanding dispositive motions. At the hearing, Turner admitted that he never served a copy of the summons and complaint upon the United States, as required by Rules 4(d)(4) and 4(d)(5), and that he served copies of subsequent pleadings only upon the State of Mississippi.

7. Turner has never filed a summons and complaint in this case. Even if Turner's application for a temporary restraining order were construed to be a complaint, Turner has failed to effect proper service of this pleading upon the United States.

8. *See supra* note 3.

9. *See supra* note 4.

10. Rule 4(j) provides as follows:
 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

11. Section 16(c) of FIFRA provides that "[t]he district courts of the United States are vested with jurisdiction specifically to enforce, and to

## III. *Conclusions of Law*

Turner has failed to effect proper service of his "summons and complaint" [7] upon the United States, as required by Rules 4(d)(4),[8] 4(d)(5),[9] and 4(j).[10] At the March 15, 1994, hearing, Turner argued that the United States' appearance in the case constituted a waiver of any objections based on personal jurisdiction or the sufficiency of process. However, this court concludes that the United States has preserved its objections to personal jurisdiction and to the sufficiency of process in this case. The United States raised this issue before the court's hearing on plaintiff's application for a TRO, and again after the court ruled against plaintiff. This court even advised plaintiff that the United States contested sufficiency of process and that he should review the law on the subject. Therefore, this court grants EPA's Motion to Dismiss based on a lack of personal jurisdiction over EPA. *See Sanchez–Mariani v. Ellingwood*, 691 F.2d 592, 594 (1st Cir.1982).

This court also concludes that there is a lack of subject matter jurisdiction in this case. Turner relies on section 16(c) of FIFRA, 7 U.S.C. § 136n(c), as the sole jurisdictional basis for this lawsuit.[11] However, FIFRA does not contain an express "citizen suit" provision authorizing particular persons to seek federal district court review of alleged FIFRA violations.[12] Therefore, Tur-

prevent and restrain violations of [FIFRA]." 7 U.S.C. § 136n(c).

12. FIFRA expressly provides that in the context of a controversy as to the validity of any order issued following a public hearing, "any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review" of any order issued by the Administrator in the federal courts of appeal. 7 U.S.C. § 136n(b). Given this provision, it is reasonable to infer that Congress' decision to omit a citizen suit provision for district court review was intentional rather than inadvertent. *Cf.* Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365 (express citizen suit provision); Clean Air Act, 42 U.S.C. § 7604 (express citizen suit provision); Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9659 (express citizen suit provision); Solid Waste Disposal Act, 42 U.S.C. § 6972 (express citizen suit provision); Toxic Substances Control Act, 15 U.S.C. § 2619 (express citizens' civil actions provision).

ner may maintain this action under FIFRA only if the statute implies a private right of action.

Applying the *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), test to FIFRA demonstrates that Congress did not intend to create a private right of action for citizens. First, FIFRA does not focus on any particular class of beneficiaries whose welfare Congress intended to further. Instead, the statute states "no more than general proscriptions of certain activities." *Fiedler v. Clark,* 714 F.2d 77, 79 (9th Cir. 1983) (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)).

Second, and most importantly, there is no indication of legislative intent to create a private right of action for citizens.[13] To the contrary, Congress has repeatedly considered and rejected proposed amendments authorizing citizen suits under FIFRA. *See* S.Rep. No. 838, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 3993, 4060–61, 4090; S.Rep. No. 970, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4092, 4106, 4125; Conf.Rep. No. 1540, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4130, 4133.

Third, the judicial inference of a private right of action would be inconsistent with the underlying purposes of the legislative scheme. *See Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. In 1978, Congress amended the enforcement provisions of FIFRA to expressly apportion the authority to bring enforcement actions between the states and EPA. *See* 7 U.S.C. § 136w–1. This "integration of state remedies to enforce the purposes of FIFRA ... suggests ... that Congress intended to restrict the range of enforcement choices to those set forth in the Act itself." *Almond*

*Hill Sch. v. USDA,* 768 F.2d 1030, 1038 (9th Cir.1985).

Application of the *Cort v. Ash* test to FIFRA indicates that Congress did not imply a private right of action for citizens. The majority of courts that have considered this issue have reached the same result. *See Fiedler,* 714 F.2d at 79 (finding no private cause of action for injunctive or declaratory relief under FIFRA); *In re Agent Orange Prod. Liab. Litig.,* 635 F.2d 987, 991–92 n. 9 (2d Cir.1980) (finding no private right of action for Vietnam War veterans), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *Oregon Envtl. Council v. Kunzman,* 714 F.2d 901 (9th Cir.1983) (finding no private right for environmental groups and private individuals); *Patterson v. Amos,* No. 1:91 CV 131, 1991 WL 575826, 1991 U.S.Dist. LEXIS 12127 at *2–*3, *5 (W.D.Mich. Aug. 27, 1991).

Finally, the district court cases that have found a private right of action under 7 U.S.C. § 136n(c) involved "registrant suits." *See Eli Lilly & Co. v. EPA,* 615 F.Supp. 811, 816–18 (S.D.Ind.1985); *Mobay Chem. Corp. v. Train,* 394 F.Supp. 1342 (W.D.Mo.1975). That exception is inapplicable to the present case because Turner is not a "registrant" as defined in FIFRA.[14]

■ Because there is no private right of action for nonregistrants under FIFRA, EPA's Motion to Dismiss based on a lack of subject matter jurisdiction is granted.

■ Yet, even if all jurisdictional requirements were met, this court would grant EPA's Cross–Motion for Summary Judgment because the Texas Court of Appeals recently affirmed the trial court's finding that DLT Mound Leveler is a pesticide.[15] In *Turner v.*

---

**13.** In discussing private rights of action under a parental kidnapping statute, the Court in *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), discussed the *Cort* test and noted:

> The intent of Congress remains the ultimate issue ... and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or from some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.,* 484 U.S. at 179, 108 S.Ct. at 516 (citation omitted).

**14.** Under FIFRA, "registrant" is defined as "a person who has registered any pesticide pursuant to the provisions of this subchapter." 7 U.S.C. § 136(y). In the present case, Turner has never registered his product, DLT Mound Leveler, with EPA.

**15.** Although the Texas Court of Appeals applied Texas law, and not FIFRA, the state law definition of "pesticide" (*i.e.,* "a substance or mixture of substances intended to prevent, destroy, repel, or mitigate any pest") is virtually identical to the FIFRA definition. *Compare* Texas Agric.Code

*State of Texas,* 850 S.W.2d 210 (Tex.Ct.App. 1993), the Texas Court of Appeals stated:

> Turner testified that although he originally believed that his formula killed fire ants, later experiments revealed that ... aaNKILL 44 and its progeny [including DLT Mound Leveler] immobilize the ants for a while so that they cannot eat.
>
> \* \* . \* \* \* \*
>
> Turner further testified that he sold the formula as Plus and DLT Mound Leveler after he arrived at the conclusion that it did not actually kill the ants and was thus not a pesticide. Turner stated that the purpose of the DLT Mound Leveler was, in fact, to level mounds.
>
> \* \* \* \* \* \*
>
> We agree with the trial court that Turner's testimony ... demonstrates conclusively that Turner's formula was intended to be used to "prevent, repel, or mitigate" fire ants. The formula kills the fire ants by preventing them from eating and this reaches the same end result as any other pesticide. Turner's statements regarding his formula are mere euphemisms for the fact that it is a pesticide.
>
> This Court is bound by the principle that when a litigant admits positive facts which defeat his right to recover, and such admissions are not subsequently modified by the litigant, then he or she is conclusively bound by such admissions.

*Id.* at 213.

Thus, the precise issue presented in this action was raised and actually litigated in the Texas Court of Appeals. Moreover, the determination of that issue was necessary to the outcome of the Texas case, and the state court action resulted in a final judgment on the merits. Finally, there is no evidence that Turner did not have a full and fair opportunity to litigate the issue of whether DLT was a pesticide before the Texas Court of Appeals. Therefore, this court accords preclusive effect to the judgment of the Texas Court of Appeals. *See Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980) (under 28 U.S.C. § 1738, all federal

courts are required to give preclusive, effect to state court judgments whenever the courts of the State from which the judgments emerged would do so); *Poster Exchange, Inc. v. National Screen Serv. Corp.,* 517 F.2d 117, 122 (5th Cir.1975) (party precluded from "relitigating an issue decided against him in prior action, even if the party asserting the estoppel was a stranger to the prior action").

 Accordingly, this court holds that pursuant to the preclusive effect of the judgment of the Texas Court of Appeals, the question whether the product in question is a pesticide has been resolved against plaintiff. But, even in the absence of the judgment of the Texas Court of Appeals, this court grants EPA's Cross–Motion for Summary Judgment because this court is convinced that under the undisputed facts EPA was authorized to issue the SSUROs to restrict the sale and distribution of DLT Mound Leveler. This court reaches this conclusion based upon the undisputed facts. Of course, under Rule 56, where a party moves for summary judgment, the responding party is tasked with showing the existence of disputed facts which would preclude summary judgment for the movant. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff has not done that here.

The product's label contained a picture of a fire ant, a quote concerning fire ants, use instructions that were similar to other mound drench pesticides, and no claims that the product was a soil amendment or plant nutrient product. The product was sold alongside other pesticides, not soil amendment or plant nutrient products. Furthermore, the formula for DLT Mound Leveler was almost identical to another product that Turner previously had submitted to EPA for registration as a pesticide. This court is persuaded that based on this undisputed evidence, EPA had "reason to believe" that DLT Mound Leveler was a pesticide being sold and distributed in violation of FIFRA. *See* 7 U.S.C. § 136k.

These same factual assertions support the State's Motion to Dismiss. Accordingly, this court grants the State's Motion to Dismiss

Ann. § 76.001(18) (Vernon 1982), with 7 U.S.C. § 136(u).

because DLT Mound Leveler's intended use and label describe a pesticide product. Turner's assertion that DLT Mound Leveler is a "soil amendment" is meritless.[16]

This court also grants the State's Motion to Dismiss because Turner's claims for monetary relief against the State of Mississippi are barred by the Eleventh Amendment, which is a jurisdictional bar to citizen suits against a state, or a state agency or department. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). To the extent that the State of Mississippi did not issue the subject stop sale orders, plaintiff's claim for injunctive relief is hereby dismissed.

This court denies all of Turner's motions. Plaintiff's motions for summary judgment which ask the court to find that his product is a soil amendment and not a pesticide assert positions inconsistent with the conclusions of law detailed above.

This action is dismissed with prejudice. A separate judgment shall be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**

---

**16.** Under Mississippi law, a "soil amendment" is defined in the following way:

"Soil amendment" means and includes any substance which is intended to improve the physical, chemical or other characteristics of the soil or improve crop production, except the following: ... pesticides ...

Miss.Code Ann. § 69–24–5(q).