Sylvia R. THIGPEN and d/b/a Merry–Go–Round Kindergarten and Nursery, Plaintiff,

v.

CHEMINOVA, INC., A Delaware Corporation, and Cheminova–Agro S/A, Dock Eatman and Paul Walls, Defendant.

No. Civ.A. 1:97CV50GR.

United States District Court, S.D. Mississippi, Southern Division.

Aug. 28, 1997.

Elmer Louis Fondren, Jr., Fondren & Fondren, Pascagoula, MS, Judy M. Guice,

Law Offices of Judy M. Guice, Biloxi, MS, for Plaintiff.

Jackson H. Ables, III, J. Price Coleman, David Malcolm McMullan, Jr., James Bassett Hurley, Jr., Daniel, Coker, Horton & Bell, Jackson, MS, for Defendants.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before on the plaintiffs' amended motion to remand this case to state court [24–1]. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and otherwise being fully advised in the premises, the Court finds, as set forth below, that the plaintiffs' motion should be granted.

### Legal Analysis

The defendants invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1332 and 1441(b), the provisions for federal question, diversity, and removal jurisdiction.[1] "Federal courts are courts of limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress." *Aetna Cas. & Sur. Co. v. Hillman,* 796 F.2d 770, 773 (5th Cir.1986) (citation omitted). When an action is removed by a defendant to federal court, Congress has mandated that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See* 28 U.S.C. § 1447(c). "When the plaintiff moves to remand for lack of jurisdiction, the burden of establishing original federal jurisdiction rests upon the defendant." *Kidd v. Southwest Airlines,* 891 F.2d 540, 543 (5th Cir.1990).

### I. *Federal Question Jurisdiction*

Federal question jurisdiction arises when the allegations of the complaint are "founded on a claim or right *arising under* the Constitution, treaties or laws of the United States." *See* 28 U.S.C. §§ 1441(b), 1331 (emphasis added). Although there exists no set formulation that encompasses all factors

---

1. As discussed further below, the defendants omit reference to 28 U.S.C. § 1441(a), which must be satisfied before considering removal under section 1441(b).

relevant to determining whether an action "arises under" federal law, the test applied by the courts is the "well-pleaded complaint" rule. *Kidd,* 891 F.2d at 542.

■ Essentially, the well-pleaded complaint rule directs the court's jurisdictional inquiry to "what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Oklahoma Tax Comm'n v. Graham,* 489 U.S. 838, 841, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (citations omitted). The cause of action set forth in the original complaint arises under federal law if (1) "some *substantial,* disputed question of federal law is a necessary element of one of the well-pleaded state claims" or (2) "one of the claims is effectively one of federal law." *Self–Insurance Inst. of Am., Inc. v. Korioth,* 993 F.2d 479, 483 n. 6 (5th Cir.1993) (citation and internal quotation omitted; emphasis added).

### A. *Federal Insecticide, Fungicide, and Rodenticide Act [FIFRA]*

■ In their complaint, the plaintiffs allege, *inter alia,* as follows:

11. The Defendants, and each of them, are guilty of the following acts of negligence, each of which was separate act of negligence and a proximate cause of the loss, damage, injury and suffering of the Plaintiff as hereinafter set forth.

 a. Failure to advise the Plaintiff of the toxic and dangerous characteristics of the insecticide product containing methyl parathion;

 b. Failing and omitting to place any warnings or sufficient warnings on their containers to warn Plaintiff and others of the dangers to health in coming in contact with said products containing methyl parathion;

 c. Failing and omitting to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan concerning exposure to said insecticide products;

 d. Inadequately warning; if in fact they warned at all, Plaintiff and others of the dangers to her health in coming in contact with and breathing said products;

 e. Failing to test and inspect said insecticide product containing methyl parathion in order to ascertain the dangers involved in their use;

 f. Failing to remove the insecticide product from the market and/or develop alternative products for use as an insecticide upon ascertaining that the product was unreasonably dangerous and toxic and would cause permanent disease and injury to the body;

 g. Failing to warn Plaintiff and others of the foreseeable danger of inhaling and being otherwise exposed to the insecticide product containing methyl parathion;

 h. Failing to warn and provide a safe environment for the use of said insecticide product containing methyl parathion, if in fact, such a safe environment can be devised;

 i. Failing to package the product in such a way that would restrict its use to outside applications;

 j. Failing to include an odorant and/or dye that would restrict its use to outside applications;

 k. Other acts of negligence to be shown at trial.

(Compl., ¶ 11(a–k).) The defendants contend that the instant controversy is completely preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, § 24(b) [FIFRA], as amended, 7 U.S.C.A. § 136v(b), so that the plaintiffs' claims are removable pursuant to federal question jurisdiction, 28 U.S.C. § 1331. "[T]he complete preemption doctrine, when properly invoked, renders subject matter jurisdiction possible even where the federal question is raised as a defense and does not appear on the face of the complaint." *Hyzer v. Cigna Property Cas. Ins. Co.,* 884 F.Supp. 1146, 1149 (E.D.Mich.1995). The Court finds, however,

that this is not a case where the doctrine of complete preemption has been properly invoked. The mere fact that the defendants raise federal preemption under FIFRA as an affirmative defense does not, standing alone, trigger federal question jurisdiction for purposes of removal. *See* 905 F.Supp. 512, 513; *Martinez v. Dow Chemical Co.,* 1996 WL 502461, *2 (E.D.La., Sep.4, 1996); *see also Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir.1992) (good federal preemption defense under FIFRA does not necessarily establish "complete preemption" sufficient to support removal jurisdiction).

The Court finds that the defendants' complete preemption argument actually "blurs the distinction between preemption and the creation of federal question jurisdiction." *Murray v. Commonwealth Edison,* 905 F.Supp. 512, 513 (N.D.Ill.1995) (distinguishing preemption of FIFRA claims and federal question jurisdiction based on well-pleaded complaint rule). The defendants quote extensively from *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993). (Defs.' Resp. Br., pp. 15–18.) The lawsuit in *Worm,* however, was removed to federal court based on diversity jurisdiction, not federal question jurisdiction. *See Worm v. American Cyanamid Co.,* 970 F.2d 1301, 1304 (4th Cir.1992). The analysis in *Worm* is therefore limited to the issue of preemption, not the separate issue arising in this case, i.e., whether federal question jurisdiction can be invoked by the defendants as a basis for removal. *See Murray,* 905 F.Supp. at 514. It follows that the defendants' reliance on *MacDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir.1994),[2] and *King v. E.I. Dupont De Nemours and Co.,* 996 F.2d 1346 (1st Cir.1993), both preemption cases pursuant to federal diversity jurisdiction, is misplaced. *See Defs.' Resp. Br., pp. 14–15, 18.[3]

The defendants further cite *Hart, et al. v. Bayer Corporation, et al.,* 3:96cv414WS (S.D.Miss. October 28, 1996) (unpublished), for the proposition that the Court has federal question jurisdiction to support removal. The defendants in *Hart,* as in this case, contended that the FIFRA "completely preempts all of plaintiffs' claims, making this action removable to federal court ..." (Defs.' Resp. Br., Exh. B (Joint Notice of Removal), at p. 2.) The *Hart* defendants cited, and the district court relied in part on, *Burge v. Jones,* 1992 WL 415263, 61 USLW 2348 (S.D.Tex., Nov.18, 1992). *See* Defs.' Resp. Br., Exh. B (Joint Notice of Removal), at p. 2; (Conclusions of Law issued October 28, 1996), ¶ 2. As set forth below, the Court finds that *Hart* is not dispositive on the law of the Fifth Circuit with regard to whether claims preempted by FIFRA are removable on the basis of federal question jurisdiction.

■ As noted by the plaintiffs, the Southern District of Texas subsequently issued *Rodriguez v. Shell Oil Co.,* 818 F.Supp. 1013 (S.D.Tex.1993), which takes a contrary position than the analysis in *Hart.*[4] The *Burge* and *Rodriguez* decisions were rendered by different U.S. district judges. Unless the doctrine of *res judicata* or collateral estoppel applies, district judges are not bound by the decisions of other district judges. *See TMF Tool Co., Inc. v. Muller,* 913 F.2d 1185, 1191 (7th Cir.1990); *see also Starbuck v. San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir. 1977); *Forward v. Cotton Petroleum Corp.,* 540 F.Supp. 122 (D.Colo.1982); *Mueller v. Allen,* 514 F.Supp. 998, 1001 (D.Minn.1981), *aff'd,* 676 F.2d 1195 (8th Cir.1982), *aff'd,* 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983). It is the federal appellate courts, not federal district courts, that are charged with the responsibility for maintaining the unifor-

---

2. In *MacDonald,* the Fifth Circuit held that section 136v(b) of the FIFRA preempts state common-law damage claims based upon a manufacturer's failure to properly label herbicides and pesticides or to properly warn of dangers associated with their use.

3. As in *Worm,* the *MacDonald* case was removed to the district court on the basis of federal diversity jurisdiction, not federal question jurisdiction. *See MacDonald,* 27 F.3d at 1023. In *King,* the

plaintiffs filed suit in federal court against four manufacturers of chemical herbicides on the basis of federal diversity jurisdiction. *See King,* 996 F.2d at 1347.

4. The plaintiffs contend that the Southern District of Texas later "reversed its position from the unpublished opinion of *Burge v. Jones.*" (Pl.'s Reb., at p. 5.) For reasons set forth in this Memorandum Opinion, the Court does not read *Rodriguez* as a reversal of *Burge.*

mity of the law. *TMF Tool,* 913 F.2d at 1191.

After surveying Fifth Circuit case law, the *Rodriguez* court followed the analysis in *Aaron v. National Union Fire Ins. Co. of Pittsburg, Pa.,* 876 F.2d 1157 (5th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990), where a Fifth Circuit panel held that the Longshore and Harbor Workers' Compensation Act [LHWCA] did not completely preempt state law sufficient to authorize removal under federal question jurisdiction. In making its determination, the panel found that the LHWCA (1) did not provide a private right of action and (2) did not contain a specific provision granting federal subject matter jurisdiction. *Id.* at 1163–66. Applying the same analysis as *Aaron,* the *Rodriguez* court held that, "[b]ecause FIFRA does not satisfy either of these requirements, FIFRA preemption will not support removal in this case." *Rodriguez,* 818 F.Supp. at 1015. Rejecting the defendant's argument that *Aaron* was not controlling on the issue of removal jurisdiction, the *Rodriguez* court further reasoned as follows:

> [I]it is abundantly clear that in enacting FIFRA, Congress did not intend to so completely preempt the field as to allow the removal from state court of FIFRA-preempted claims. Outside of the express preemption provision, there is simply no legislative history to support the contrary contention, and, in the Court's view, express preemption, without more, is insufficient to support removal.

*Rodriguez,* 818 F.Supp. at 1017 (footnote omitted).

The *Hart* court further relied on *LaCoste v. Stamps,* 1995 WL 442070 (E.D.La., July 25, 1995), where the Eastern District of Louisiana held that the plaintiff's claims were completely preempted by FIFRA, relying in part on *MacDonald,* a diversity case. As noted by *Murray, supra,* the *LaCoste* court failed to distinguish between ordinary preemption and complete preemption that bestows federal question jurisdiction for purposes of removal. *See Murray,* 905 F.Supp.

at 514. In any event, the Eastern District of Louisiana, following *Rodriguez,* subsequently made the appropriate distinction in *Martinez, supra,* holding that "FIFRA does not provide a private right of action nor specifically grant jurisdiction to the federal courts, and thus does not provide removal jurisdiction." *Martinez,* 1996 WL 502461, at *3.[5] The Court thus finds that *Rodriguez,* not *Hart,* correctly articulates the law of the Fifth Circuit as set forth by *Aaron.*

As a related matter, the defendants argue that the plaintiffs' reliance on *Turner v. U.S. E.P.A.,* 848 F.Supp. 711 (S.D.Miss.1994), is misplaced because it did not involve the issue of remand. (Defs.' Resp. Br., pp. 2–3.) Although not a remand case, the Court disagrees that the analysis in *Turner* does not lend support to the plaintiffs' jurisdictional argument in support of remand. In *Turner,* the plaintiff was a distributor of the product, DLT Mound Leveler, which was formulated to control fire ants. *Turner,* 848 F.Supp. at 714. Alleging that the product was not a pesticide subject to FIFRA registration, the plaintiff sought a temporary restraining order under FIFRA to enjoin the Environmental Protection Agency [EPA] and the State of Mississippi from restricting the sale and distribution of the product. *Id.* The *Turner* court, finding that the plaintiff had never registered the mound leveler with the EPA, granted the defendants' motion to dismiss, holding that "there is no private right of action for nonregistrants under FIFRA." *Id.* at 715–16 & n. 14. Specifically, the court reasoned, *inter alia,* that there is no indication of legislative intent by Congress, expressly or impliedly, to create a private right of action for citizens, especially where "Congress has repeatedly considered and rejected proposed amendments authorizing citizen suits under FIFRA." *Id.* at 716 (citations omitted). The court further observed that, although some authority indicated that a private right of action might arise pursuant to 7 U.S.C. § 136n(c) with regard to "registrant suits," that exception did not apply because the plaintiff was not a "registrant" as defined

---

**5.** The *LaCoste* and *Martinez* decisions were handed down by different United States district judges.

in FIFRA, 7 U.S.C. § 136(y). *Id.* at 716 & n. 14 (citations omitted).

It is undisputed that the plaintiffs are not registrants as defined by FIFRA. The defendants contend, however, that defendant Paul Walls was a certified private applicator, attaching as exhibits the applications for certification of Walls and defendant Dock Eatman. (Defs.' Resp. Br., at p. 5; Exh. E.) The plaintiffs counter that the complaint makes no reference to anyone being a registrant or certified private applicator. (Pls.' Reb., at p. 10.) The plaintiffs further contend, *inter alia,* that the documents are submitted without "necessary affidavit proof," that the defendants have not established their own status as registrants under FIFRA, and that, in any event, "a substantial issue exists whether Defendants fully complied with all EPA requirements (as their lawyers contend)." *(Id.)* Whatever the purported status of the defendants under FIFRA, which they interject as a matter of defense, the Court finds that this does not materially alter the jurisdictional inquiry. Rather, looking to the nature of the plaintiffs' allegations, the Court finds that the plaintiffs' lawsuit does not establish a basis for federal removal jurisdiction, notwithstanding preemption under FIFRA may well arise with regard to the plaintiffs' claims. The Court thus finds that, contrary to the defendants' position, federal question jurisdiction is lacking to address the instant claims.

## II. *Diversity Jurisdiction*

The defendants contend that, in any event, the Court has federal diversity jurisdiction over the instant lawsuit. *See Hurt,* 963 F.2d at 1145. The general rule is that the existence of at least one nondiverse defendant in a lawsuit is sufficient to destroy diversity of the parties. *See* 28 U.S.C. § 1332(a); *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 814 (5th Cir.) ("for diversity jurisdiction to exist, no plaintiff may be a domiciliary of the same state as any defendant"), *cert. denied,* 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993).

■ The defendants contend in their response brief that diversity was proper because Walls was never served. (Defs.' Resp.

Br., at p. 25.) In support thereof, the defendants rely on the second sentence of 28 U.S.C. § 1441(b). Section 1441(b) reads as follows:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

28 U.S.C. § 1441(b) (emphasis added). The defendants cite no case supporting their position. The Eighth Circuit provides the following:

> Title 28 U.S.C. § 1441(b) makes diversity jurisdiction in removal cases narrower than if the case were originally filed in federal court by the plaintiff. A defendant may not remove to federal court on the basis of diversity if any of the defendants is a citizen of the state where the action was filed. As we have stated, defendant Rose is a citizen of Missouri. The fact that Irene Hurt could have invoked the original jurisdiction of the federal court initially is irrelevant. She did not. The jurisdiction of the lower federal courts, both original and removal, is entirely a creature of statute. If one of the statutory requirements is not met, the district court has no jurisdiction.

*Hurt,* 963 F.2d at 1145 (citation omitted). Although "the new language in Section 1441(b) . . . implies that a resident defendant who has not been served may be ignored in determining removability," 14A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3723, pp. 341–42, this is an incorrect reading of the provision where diversity clearly is lacking based on the pleadings. As one court reasoned:

> An action, to be removable, must be one which could have been brought in federal court. 28 U.S.C. § 1441(a). *Diversity jurisdiction is determined by the face of the complaint, not by which defendants*

have been served. Section 1441(b) is a limitation on removal jurisdiction, rather than a mechanism for expanding diversity jurisdiction. Thus, courts have refused to permit removal under Section 1441(b), when the complaint reveals that complete diversity is lacking. Here, however, there is complete diversity between all plaintiffs and all defendants. *Section 1441(b) is not being used to expand diversity jurisdiction....*

The residency limitation of Section 1441(b) is not triggered unless, and until, there is diversity jurisdiction.

*Wensil v. E.I. Dupont De Nemours and Co.,* 792 F.Supp. 447, 448 (D.S.C.1992) (citation omitted).

The analysis in *Wensil* providing the above construction was well thought out. *See Burke v. Humana Ins. Co.,* 932 F.Supp. 274, 275 (M.D.Ala.1996) ("Section 1441(b) ... does not expand diversity-of-citizenship jurisdiction but rather further restricts it within the context of removal"); *Alexander v. Metropolitan Life Ins. Co.,* 1994 WL 202350, *2 (E.D.La., May 16, 1994) (interpretation of section 1441(b) to mean that if defendant has not been served, his domicile is irrelevant to a removal action, "does not comport with judicial authority"). In fact, decisions of district courts of the Fifth Circuit have found the above construction to be representative of the majority view. *See Guidry v. Carrier Corp.,* 1992 WL 116047 (E.D.La., May 4, 1992) (majority view is that the mere fact that service has not yet been made upon the resident defendant is insufficient to allow a diverse defendant to remove); *Aydell v. Sterns,* 677 F.Supp. 877, 879 (M.D.La.1988) (same). The Eastern District of Texas, following the analysis in *Wensil,* further reasoned that Congress, in enacting section 1441(b), did not intend to modify Supreme Court precedent making service of process irrelevant in the initial determination of diversity:

Section 1441(b) ... did not change the removal requirement set forth in [*Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939) ] that a court, in determining the propriety of removal based on diversity of citizenship, must consider all named defendants *regardless of service.*

*In re Norplant Contraceptive Products Liability Litigation,* 889 F.Supp. 271, 274 (E.D.Tex.1995) (citation omitted; emphasis added).

The complaint filed in state court names Walls and Eatman as defendants residing in the State of Mississippi. (Compl., ¶¶ 4–5.) The Court finds that the presence of these nondiverse parties demonstrates that this Court did not have original jurisdiction over this state court action on the basis of diversity of citizenship. *See* 18 U.S.C. §§ 1332, 1441(a). The Court thus finds that, although the record reflects that Walls and Eatman have been served, (Pls.' Reb., Exhs. B & C), the Court need not take notice of that fact to find that this action was not removable from state court. It follows that the defendants' argument that section 1441(b) operates to permit removal on the basis of diversity jurisdiction is devoid of merit.[6]

The defendants suggest that, because "Walls is not a Rule 17(a) real party in interest on plaintiff's federal warnings claim as asserted in Count One" (emphasis omitted), he need not be counted because he is essentially a nominal party for purposes of the diversity determination. (Defs.' Resp. Br., at p. 24.) The defendants further emphasize that "Walls is not a chemical formulator registered with the EPA," charged by law, *inter alia,* to provide adequate warnings to end users of the product. *Id.*

"There is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real

---

**6.** Assuming *arguendo* the defendants are attempting to reach the service-of-process issue under section 1441(b) based on their argument that original jurisdiction arises under section 1331 (federal question jurisdiction), this contention similarly lacks merit. The Court has determined at an earlier point in this analysis that federal question jurisdiction does not exist. Therefore, because the defendants fail to satisfy the threshold test under section 1441(a), section 1441(b) remains altogether inoperative. *See In re Norplant,* 889 F.Supp. at 274; *Wensil,* 792 F.Supp. at 448.

parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 463 n. 9, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Rule 17(a), however, does not alter or expand the substantive requirements for federal diversity jurisdiction. *See* 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE, § 1556, p. 421; *Estate of Portnoy v. Cessna Aircraft Co.*, 730 F.2d 286, 290 (5th Cir.1984). Federal Rule of Civil Procedure 17(a) provides, *inter alia*, that "[e]very action shall be *prosecuted* in the name of the real party in interest." FED.R.CIV.P. 17(a) (emphasis added). A plain reading of the rule demonstrates that the "real party in interest" refers to parties filing suit, not defendants. *See* 6A WRIGHT, MILLER & KANE, § 1556, p. 422 ("nominal or formal parties, who do not have a significant interest in the outcome of the litigation, *should not be able to use the federal courts*"); *Lee v. Navarro Sav. Assn.*, 597 F.2d 421, 425 (5th Cir.1979); *Navarro*, 446 U.S. at 463 n. 9; *Moore ex rel. State of Miss. v. Abbott Laboratories, Inc.*, 900 F.Supp. 26, 31 (S.D.Miss.1995). As articulated by the Fifth Circuit:

> Rule 17(a) requires that all actions in federal courts *be brought by the real party in interest.* Even if a party is not the real party in interest, Rule 19 requires that party's joinder if it is "necessary for a just adjudication" of the action.
>
> . . . .
>
> The real party in interest is the person *holding the substantive right sought to be enforced,* and not necessarily the person who will ultimately benefit from the recovery. Conversely, a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it.

*Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir.1990) (citation omitted; emphasis added). Arguably, the defendants are attempting to employ Rule 17(a) in a manner not contemplated by the drafters. In an abundance of caution, the Court reads the "real parties to the controversy" language articulated by *Navarro* to encompass defendant parties.

Most importantly, even including defendant parties in the instant inquiry, the Court finds that neither Walls nor Eatman are nominal parties. To the contrary, the Court finds that they clearly are real parties to the controversy. The defendants' reference to Walls (and presumably Eatman) as a nominal party depends in part on their reliance on law where the nondiverse defendants "could not conceivably be liable." (Defs.' Resp. Br., at p. 23.) The Court finds otherwise from a reading of the pleadings. Moreover, the defendants' attempt to minimize the potential liability of Walls and Eatman appears to be self-serving. At a later point in their brief, the defendants attempt to absolve themselves of liability based on Walls' alleged "intentional, illegal misuse of restricted use pesticides," contending that, "[a]s we know, from a late-breaking news report attached as an exhibit to the response, that Walls' spraying of methyl parathion in some houses has been conducted in the face of a court order to stop doing it." (*Id.* at p. 26.) Without deciding the merits of the complaint, the Court finds that, given the nature of the allegations and the involvement of Walls and Eatman in circumstances underlying this lawsuit, their potential liability under state and/or federal law makes them real parties in interest—or real parties to the controversy—for purposes of calculating diversity. *Cf. Humm v. Lombard World Trade, Inc.*, 916 F.Supp. 291, 297 (S.D.N.Y.1996) (defendants were real parties in interest because they were potentially liable). The Court reaches the same result under the "stake in the outcome" test applied by federal courts in cases involving Rule 17(a) in the context of a diversity determination. *See, e.g., Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir.1985), *cert. denied*, 475 U.S. 1130, 106 S.Ct. 1660, 90 L.Ed.2d 202 (1986); *Lester v. McFaddon*, 415 F.2d 1101, 1106 (4th Cir.1969). Applying that test, the Court finds that, looking to the allegations against Walls and Eatman, they presumably have a stake in the outcome of the controversy. The Court therefore considers their citizenship in determining that diversity jurisdiction does not exist in this lawsuit.

### III. *Eatman's Bankruptcy*

Cheminova contends that Eatman's intervening bankruptcy provides the Court an

alternative basis for federal removal jurisdiction.[7] Cheminova now characterizes its removal as pursuant to Bankruptcy Rule 9027. As such, Cheminova attempts to include the plaintiffs' pending FIFRA claims within the federal bankruptcy umbrella. The plaintiffs contend that the amended notice of removal neither invokes nor complies with Rule 9027, which requires a statement that the proceeding is "core or non-core," whether the party filing the notice of removal "does or does not consent to entry of final orders or judgment by the bankruptcy judge," and "a copy of all process and pleadings." FED.BANKR.R. 9027. The Court need not address this issue because, as set forth below, Cheminova's attempt to establish federal removal jurisdiction on the basis of Eatman's bankruptcy fails on a more fundamental basis.

 The plaintiffs contend that this case should be remanded to state court on grounds of abstention. Cheminova contends that the plaintiffs cannot rely on abstention as a basis to defeat the exercise of federal removal jurisdiction. Cheminova argues, *inter alia*, that the plaintiffs "confuse the concepts of remand and abstention." (Defs.' Resp., at p. 5). The Court disagrees that the abstention inquiry is not implicated by Eatman's bankruptcy petition filed during the pendency of the plaintiffs' motion to remand. Contrary to Cheminova's argument, "[a] considerable overlap exists between the factors appropriate to abstention and those appropriate to remand." *In re U.S. Brass Corp.*, 173 B.R. 1000, 1005 (Bankr.E.D.Tex.1994) (citing *In re Engra, Inc.*, 86 B.R. 890 (S.D.Tex. 1988)). In determining whether abstention is proper, the Court must look to the relationship between this removed action and the pending bankruptcy case. Congress provides as follows:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Because this action was filed prior to Eatman's bankruptcy petition, it exists independently of bankruptcy law. *See In re U.S. Brass Corp.*, 173 B.R. at 1004–05. The removed action therefore does not "arise in" or "arise under" Eatman's bankruptcy case. *Id.* There is no other basis for federal court jurisdiction other than the FIFRA claims, which the Court finds in the above analysis do not provide a basis for federal removal jurisdiction. *Id.* The only connection with Eatman's bankruptcy is the potential effect, if any, of the plaintiffs' claims on Eatman's bankruptcy estate. *Id.*

 "[A] matter is related to a bankruptcy case for § 1334 purposes if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Matter of Zale Corp.*, 62 F.3d 746, 752 (5th Cir.1995) (citation and internal quotation omitted). Other than Eatman's exposure to liability, Cheminova fails to show how the administration of Eatman's bankruptcy estate would be effected by the plaintiffs' claims. *See, e.g., In re Engra, Inc.*, 86 B.R. at 895. Moreover, Federal bankruptcy and FIFRA address separate concerns and federal policies and cannot be artificially linked to produce the unnatural result suggested by Cheminova. Most importantly, the subject of this action is not Eatman's bankruptcy estate. *Matter of Zale*, 62 F.3d at 753–54. For the above reasons, the Court therefore finds that this lawsuit is not related to Eatman's bankruptcy. *See id.* It follows that, lacking any basis for federal removal jurisdiction, Cheminova's attempt to remove this action collapses without resort to the principles of abstention.[8]

---

**7.** On April 28, 1997, the Court granted the defendants' motion for leave to amend the notice of removal to include Eatman's bankruptcy as a basis for removal jurisdiction.

**8.** Cheminova further contends that abstention would be improper because this case would be more effectively managed if it were consolidated with similar cases in a multi-district litigation context. Cheminova contends that it has filed a motion to achieve that end with the Panel on Multi–District Litigation. For purposes of this inquiry, the multi-litigation of FIFRA claims is unrelated to Eatman's bankruptcy. Assuming Cheminova ultimately succeeds in its attempt to consolidate such lawsuits in the Southern District of Mississippi, the Court is not persuaded that this lawsuit will be more efficiently managed if the plaintiffs' motion to remand is denied.

874

Alternatively, even assuming *arguendo* that this action were "related to" Eatman's bankruptcy, the Court finds that remand is proper under section 1334(c)(1). Additionally, Congress provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground.*" 28 U.S.C. § 1452(b) (emphasis added). There is no question that Eatman's bankruptcy petition is properly in bankruptcy court. This does not, however, require the Court to exercise federal removal jurisdiction in light of the plaintiffs' FIFRA claims against Cheminova, Eatman, and Walls. Other than Eatman's bankruptcy, which is a separate proceeding, there is no independent basis for federal removal jurisdiction. Furthermore, the litigation of the plaintiffs' claims in state as opposed to federal court will have no distinguishable effect on the bankruptcy case. The plaintiffs have already experienced considerable delay challenging the defendants' removal of this action from state court. At this juncture, the Court finds that principles of fairness require that the plaintiffs be allowed to litigate this lawsuit in their forum of choice. *See In re Engra, Inc.,* 86 B.R. at 895. For the above reasons, the Court finds that the circumstances of this case justify permissive abstention under section 1334(c)(1) and equitable remand under section 1452(b).

### Conclusion

For the above reasons, the Court finds that, although preemption under FIFRA may well arise with regard to claims alleged by the plaintiffs, FIFRA does not provide a basis for federal question jurisdiction sufficient to support the removal of this action from state court. The Court further finds that, because defendants Walls and Eatman are nondiverse parties, the defendants have not met their burden in showing that federal diversity jurisdiction exists. Additionally, the Court finds that, because the instant lawsuit is not related to Eatman's intervening bankruptcy, the bankruptcy proceeding does not support federal removal jurisdiction over the instant claims. Alternatively, the Court finds that the Court is not required to exercise federal removal jurisdic-

tion over this lawsuit because remand is proper on grounds of permissive abstention under section 1334(c)(1) and equitable remand under section 1452(b). The Court therefore finds that the plaintiffs' amended motion to remand [24–1] should be granted and this action remanded to the Circuit Court of Jackson County Mississippi. A judgment in accordance with this Memorandum Opinion shall issue this date. All parties shall bear their respective costs.

### FINAL JUDGMENT

This cause is before on the plaintiffs' amended motion to remand this case to state court [24–1]. In accordance with the Court's Memorandum Opinion, issued this date, incorporated herein by reference, it is hereby,

ORDERED AND ADJUDGED, that the plaintiffs' amended motion to remand this case to state court [24–1] be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED, that the plaintiffs' lawsuit be, and is hereby, remanded to the Circuit Court of Jackson County, Mississippi. The Clerk of this Court is directed to mail this file with a certified copy of this Final Judgment to the Clerk for the Circuit Court of Jackson County, Mississippi. It is further,

ORDERED AND ADJUDGED, that all parties bear their respective costs.